HOPE MINING COMPANY OF ST. LOUIS, APPELLANT, *v.* BROWN, RESPONDENT.

[Argued October 15, 1891.   Decided December 28, 1891.]

MINES AND MINING— *Tunnel rights— Section* 2323, *Revised Statutes of the United States, construed.*—Under section 2323 of the Revised Statutes of the United States, granting rights to tunnel claimants and providing that locations on the line of the tunnel of veins not appearing on the surface, made by others after the commencement and prosecution of the tunnel with reasonable diligence, shall be invalid, proceedings for a patent to a mining claim located after a tunnel location and within the surface boundaries thereof will be restrained while the tunnel claimant is prosecuting his work as required by law, and until it is demonstrated that the vein in the surface location will not be discovered in the tunnel, or until such tunnel rights are abandoned.   (*Hope Min. Co.* v. *Brown,* 7 Mont. 550, reviewed and applied.)

*Appeal from Third Judicial District, Deer Lodge County.*

Action to determine the right to the possession of mining premises.   The cause was tried before DURFEE, J.   Defendant had judgment below.

*Forbis & Forbis,* for Appellant.

The opinion of the court below as to the law in this case is embodied in the instruction asked by the defendant, and which reads as follows: " The jury are instructed that, by reason of the construction placed upon the United States statutes governing tunnel rights by the Supreme Court of Montana, in a prior case between the same parties, and by this court in the present case, the plaintiff has no standing in this court, in the matter in

controversy, or has any cause of action against this defendant, and therefore in no event can you find for the plaintiff." The only question, therefore, submitted to this court in this matter is the question as to the construction of the United States statute, with reference to the location of tunnel rights or claims upon mineral lands. The appellant assigns as error the instructions given on the part of the defendant, and those refused which were asked by the plaintiff, but all of those assignments are combined in the one question in the construction of the United States law, and that question is simply this: Will the location of a tunnel right support a suit brought upon an adverse claim? In the outset, the appellant does not wish to be understood as claiming that he may in this action absolutely defeat the claim of the respondent under the Prince Imperial Lode Claim location. As that location stands at the present time, it is undoubtedly good as against any claim that the appellant can assert in this suit, for at the time of the commencement of this action the appellant had not discovered a vein in its tunnel upon which it could make a location including the land in controversy. We claim, however, that if the appellant shall continue to prosecute work upon the tunnel as required by law, keeping alive its rights as given to it by the United States statute, no location can be made along the line of this tunnel which shall not be subject to be defeated if the appellant shall finally discover a vein in its tunnel upon which it may make a location including such ground. We therefore insist that until the said tunnel shall be run to the full length or shall be abandoned, any claim made upon or along the line of the tunnel must be held in abeyance. We do not wish to be understood as claiming that we are protected only along the line of the tunnel, our claim being that we are protected for a distance of fifteen hundred feet on either side of the tunnel line; or, in other words, to the full extent of any claim that may be located upon a vein discovered within the tunnel.

It will be observed that the law (§ 2323, Rev. Stats. U. S.) declares that "locations on the line of said tunnel of veins or lodes not appearing on the surface, made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid." We

do not claim, however, that a location made as was the Prince Imperial Lode Claim is absolutely an invalid location, but we do contend that the same is subject to become invalid if we shall hereafter cover it with a proper location made upon a vein discovered in the tunnel which we are running, and until that event happens, or until the tunnel has been completed and no vein discovered, or the enterprise abandoned, we contend that the rights of this respondent should not ripen into an absolute title.     The court below seemed to take the view that if a party might locate a quartz claim upon the line of the tunnel, or in its vicinity, such claim should be allowed to ripen into a patent, and the court based its opinion upon the case of *Hope Min. Co.* v. *Brown,* 7 Mont. 550.     We cannot conceive, however, how this construction can be put upon that decision; but, on the contrary, we think the decision fully sustains the view we have taken upon this matter, which to us is the only reasonable construction that can be given to the law.     If the respondent in this case can patent the Prince Imperial Lode Claim, there can be no good reason why he cannot patent not only this, but a sufficient number of lode claims along and contiguous to the line of this tunnel, so that no vacant ground would be left for the tunnel right claimant.     In this case, there is no controversy really as to the facts.     The tunnel location is perfect; work upon it has been prosecuted diligently; the strike of the vein upon which the Prince Imperial was located crosses the tunnel line, and there is no reason to doubt but this identical vein will eventually become the property of the appellant, if it shall prosecute its rights to the end, and if the statutes of the United States mean what they say.     The only other decisions upon the question of tunnel rights, known to us, fully sustain us, as we think, in our position in this matter.     (See *Corning Tunnel etc. Co.* v. *Pell,* 4 Colo. 507; *Back* v. *Sierra Nevada Con. Min. Co.* Idaho, Feb., 1888, 17 Pac. Rep. 83.)

*William Scallon,* for Respondent.

Respondent submits that there is no material difference between this case and that between the same parties, in which the decision of this court is reported in 7 Mont. 550.     The two complaints are in the record, and from them, as well as from

the report of the case, this may be ascertained.  Then, as now, appellant claimed that defendant's location was invalid.  Precisely the same questions are presented in each case, notwithstanding immaterial differences in form, and the fact that the present suit is an adverse one.  It is evident that the rights of the parties are not affected by the fact that the suit is an adverse one, although the practice in the case may be.  The two main questions, and the two points really decided in that case, were: 1st.  What is the proper definition of the phrase "the line of the tunnel?"  And 2d.  What, if any, rights has the tunnel man prior to the discovery of a given vein in his tunnel?  And *it was held* that "the line of the tunnel" meant the width of the tunnel itself, and nothing more; and that, until such discovery, the tunnel man had no rights to a vein not discovered upon "the line of the tunnel," as defined, or as against a location not based on a discovery made on "the line of the tunnel."  No discovery has been made by the appellant in its tunnel.  The position of the parties remaining the same, the decision in the first suit is conclusive in this.  The question at issue would seem to be, whether or not the appellant has any right to the ground in controversy as against the defendant's location.  And the suit would involve the respective claims or rights of the parties to this ground.  But, according to appellants, it would appear that the only point sought to be made on this appeal is, whether the plaintiff can postpone defendant's application for a patent.  We submit that, upon precedent and reason, it cannot. (*Corning Tunnel etc. Co.* v. *Pell,* 4 Colo. 507.)  It is conceded that defendant's discovery and location were made outside of "the line of the tunnel," as defined by this court; and appellant says that this "location is at the present time undoubtedly good as against any claim which the appellant can assert in this suit. . . . ."  The present validity of the Prince Imperial being admitted, it follows that respondent is bound to represent it each year; that, to that extent, he must work it; logically, that he has a right to work it to any extent, and, logically, that he has a right to patent it; for it seems plain that any claim which can be located can be patented.  His right to prosecute an application for a patent cannot be postponed or suspended without importing into the statute something which is not

there; and it is well settled that the courts will not add to a statute in this manner. (Bishop on Written Laws, § 80; Potter's Dwarris on Statutes [2d ed.], 579.)

It was urged before this court in the first case with this difference only, that then the appellant limited itself to three hundred feet, or at most seven hundred and fifty feet, on each side of the center line of the tunnel. On the other hand, appellant concedes the present validity of the Prince Imperial Claim, but, by seeking to postpone the enjoyment of full rights of ownership in the claim, it allows to the respondent nothing substantial; therefore, now as then, it practically seeks to withdraw from the public domain over two hundred and six acres of land, as pointed out in the former decision, and in *Corning Tunnel etc. Co.* v. *Pell*, 4 Colo. 507, cited and approved by this court, and for an indefinite period, as the following calculations will show: *During the three years, four months, and twelve days next following the location of the Jubilee Tunnel* (from June 13, 1887, to October 25, 1890) *the appellant drove five hundred and fifty-eight feet of the tunnel.* Appellant asserts that it prosecuted work with due diligence. *At this rate it would take eighteen years and twenty-eight days to run three thousand feet.* It is not clear what amount of work is required to keep a tunnel right in force. If it be one hundred dollars' worth a year, the number of feet would be much less than one hundred. The Montana statute requires one hundred feet for the first year. At the rate of one hundred feet a year, it would take thirty years to complete it. The statute could never have intended any such consequences.

HARWOOD, J.— The piece of land involved in controversy in in this action is claimed by appellant by virtue of a tunnel claim located and recorded about June 13, 1887, pursuant to the laws of the United States and of Montana, and called the "Jubilee Tunnel Claim"; and the same ground is claimed by respondent as part of a quartz lode mining claim location made December 31, 1887, and duly recorded as the "Prince Imperial Mining Claim." Respondent having commenced proceedings in the United States land office to obtain patent for said Prince Imperial Quartz Lode Mining Claim, including

the ground in dispute, appellant filed in said land office an adverse claim, and commenced this action pursuant to the provisions of the statute of the United States in such cases to determine the controversy.

As appears from the record, appellant, in making said tunnel claim, marked by stakes and monuments a claim three thousand feet in length along the line of the proposed tunnel from the face thereof, by six hundred feet wide, and also marked on the surface the line of the proposed tunnel through the center, lengthwise, of said tunnel claim, and recorded said claim in compliance with the provisions of the statute of Montana in such cases. After said tunnel location was made, and work on said tunnel was commenced, respondent, by means of excavation at a point about two hundred feet north of the line of the proposed tunnel, and within three thousand feet from the face thereof, made discovery of a vein or lode bearing silver and other valuable metals, not appearing on the surface, and not known to exist prior to the location of the said tunnel site, and the commencing of the work on the said tunnel; and respondent made the location of the said Prince Imperial Quartz Lode Mining Claim on said lode, which claim is so located that it intersects and extends across the line of said proposed tunnel, laid out as aforesaid. By this action appellant sought to enjoin respondent from prosecuting said proceedings to obtain patent for so much of said Prince Imperial Claim as lies within the boundaries of said tunnel location.

A jury was impaneled to aid the court in the trial of the issues; and, among other instructions, the court instructed the jury as follows: " The jury are instructed that by reason of the construction placed upon the United States statutes governing tunnel rights by the Supreme Court of Montana in a prior case between the same parties, and by this court in the present case, the plaintiff has no standing in court in this suit in the matter in controversy, nor any cause of action against the defendant, and that, therefore, in no event can you find for the plaintiff. The only question, therefore, for you to determine is whether or not the defendant is the owner of and entitled to the possession of the premises in controversy in this suit; that is to say, that portion of the Prince Imperial Claim which is described

in the complaint. The question depends upon the validity of the defendant's location as made." The court then proceeded to instruct the jury what acts were necessary to be done by defendant in order to make a valid location of a quartz lode mining claim under the laws of the United States and of Montana.

The jury returned a general verdict in favor of the defendant. But, notwithstanding said instructions, the court, upon request of appellant, submitted to the jury special questions of fact for the jury to find upon, and thereon the jury found the following facts: That plaintiff, on or about the 13th of June, 1887, marked the boundaries of what is claimed as the "Jubilee Tunnel location," so that the same could be readily traced; that said tunnel claim was recorded by plaintiff, as required by law, specifying the place of commencement of the tunnel, the course thereof, and the name of the party interested; that within one year from the time of the location of the said tunnel claim plaintiff ran said tunnel to the depth or distance of one hundred feet; that the location of the Prince Imperial Mining Claim was made by defendant after the location and record of the Jubilee Tunnel right or claim was made; that the vein upon which defendant made the location of the Prince Imperial Lode Claim crosses the line of the Jubilee Tunnel in its strike or onward course; that no other vein than that upon which the discovery of the Prince Imperial Claim was located has been discovered within the limits of the said claim at the time of the location of the Jubilee Tunnel Claim.

The jury also found in their fifth finding that the vein upon which the defendant made the location of the Prince Imperial Lode Claim was known to exist when the location of the Jubilee Tunnel Claim was made. But the court set aside that finding, and found instead that "the vein upon which the Prince Imperial Lode location was made, and which is designated as the discovery of the 'Prince Imperial,' was not discovered and was not known to exist before the location of the Jubilee Tunnel Claim, but was discovered after the location of the Jubilee Tunnel, and after work had been begun thereon by the plaintiff." No exception is made to this action by the court, as the fact, as found by the court, is admitted by the pleadings, and

there appears to be no dispute in the evidence as to the fact being as found by the court. All other special findings of the jury the court approved.

It is not questioned in this appeal that the tunnel claimant had complied with the requirements of law in the prosecution of the work on said tunnel with reasonable diligence. It appears from the evidence, without dispute, that the tunnel had at the time of the trial been run a distance of more than five hundred feet; nor, on the other hand, is there any question raised here as to the claimant of the Prince Imperial Lode Claim having complied with the law in respect to such location. The court, however, conformably to the construction of the law as laid down in said instruction, rendered judgment on the general verdict in favor of the defendant.

This case, then, as suggested by counsel, presents questions of law which will be solved by a construction of the statutes relating to the subject. In other words, when it is determined what rights the statute vested in appellant by virtue of the location and prosecution of work on said tunnel, in compliance with the requirements of the statute, the question in this case will be practically solved; because the claims of respondent subsequently acquired, in so ·far as the same, if pursued, would divest appellant of such rights as the statute vested in it, must be at least held subject to appellant's rights. Let us, then, set these statutes before us for consideration. The statute of the United States upon this subject is found in section 2323 of the Revised Statutes, and reads as follows: "Where a tunnel is run for the development of a vein or lode, or for the discovery of mines, the owners of such tunnel shall have the right of possession of all veins or lodes within three thousand feet from the face of such tunnel on the line thereof, not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface; and locations on the line of such tunnel of veins or lodes not appearing on the surface made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid; but failure to prosecute the work on the tunnel for six months shall be considered as an abandonment of the right to all undiscovered veins on the line of such tunnel."

The statute of Montana relating to tunnel claims, enacted in 1872, is contained in five sections of the fifth division of the Compiled Statutes, as follows: "Sec. 1487. That, if any person or persons shall locate a tunnel claim for the purpose of discovery and mining, he or she shall record the same, specifying the place of commencement and the course thereof, with the names of the parties interested therein. Sec. 1488. That any person or persons so pre-empting any tunnel have the exclusive right to three hundred feet on each side from the center of said tunnel on any and all lodes that he or they may discover in the course of said tunnel; *provided,* that none of said lodes, leads, or ledges were discovered and recorded previous to the pre-emption of said tunnel, in accordance with an act passed by the legislative assembly of the Territory of Montana, entitled 'An act relating to the discovery of gold and silver quartz leads, lodes, or ledges, and the manner of their location.' Sec. 1489. That any person or persons who may work any tunnel or tunnels shall have the right of way through any and all lodes, leads, or ledges that may lie in the course of any of said tunnels; *provided,* that all quartz ore or mineral taken from said tunnel from leads, lodes, or ledges belonging to parties other than the said tunnel company shall be deposited on the surface by said tunnel company, and belong to the original occupants or owners of said lead, lode, or ledge. Sec. 1490. That in order to hold any tunnel claims to the use of themselves, their heirs and assigns, they shall, before the expiration of one year from the date of pre-emption, run to the distance or depth of one hundred feet on said tunnel. Sec. 1491. That any person or persons who shall pre-empt any tunnel claim shall be entitled to three hundred feet on each side of the mouth of said tunnel for the purpose of a quartz or ore yard."

It has not been contended that the statute of Montana, enacted as supplementary to the law of the United States just quoted, is in any way in conflict therewith. All these statutes appear, upon reading, to be plain and explicit, and without difficulty in the construction or application thereof. But it is when applied to the complex geological conditions, shown by mining operations, that difficulty arises.

What does section 2323 of the United States statute guarantee

to the party who runs a tunnel for the development or discovery of mines? This statute declares: *First,* that such party shall have "the right of possession of all veins or lodes within three thousand feet from the face of the tunnel, on the line thereof, not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface;" *secondly,* that "locations on the line of such tunnel of veins or lodes, not appearing on the surface, made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid;" *thirdly,* that "a failure to prosecute the work on the tunnel for six months shall be considered as an abandonment of the right to all undiscovered veins on the line of such tunnel."

No language can be found in which to state these propositions more clearly and plainly than that used by the statute. But in applying the statute it has been said, in a case which arose in Colorado (*Corning Tunnel etc. Co.* v. *Pell,* 4 Colo. 508), that the "line of the tunnel," as used in the statute, "designates a width marked by the exterior lines or sides of the tunnel. A greater width than this it cannot be fairly said to imply. The line of the tunnel being the width of the tunnel, the location (in the sense that it is here used of the initial point of location or discovery shaft) of the Slide Lode was not on the line of appellant's tunnel." Following that definition of the "line of the tunnel," it was held that the tunnel claimant had no rights which could sustain an adverse claim against the party applying for a patent to the Slide mining location, which crossed "the center line of the tunnel site nearly at right angles," the discovery shaft of said location being "near, but not on, the center line, being within about fifty-five feet therefrom." The definition of the "line of the tunnel" laid down in that case was followed in a case between the parties at bar, in another action, which came before the predecessor of this court, in respect to the same mining locations now under consideration (*Hope Min. Co.* v. *Brown,* 7 Mont. 550); although the construction of the statute, as held by the Colorado case, does not appear to be approved to its full extent in the case last cited, for it was said, in speaking of the rights of the tunnel claimant: "But he [the tunnel claimant] has an additional right

not accorded to the surface discoverer.   As before stated, the object of the law is to protect those explorers in the possession of the lode or vein discovered by means of their tunnel, and therefore the law-maker has seen fit to announce that if, after the commencement of a tunnel and pending the progress of its construction, a third person should locate a vein or lode on the line of the tunnel, . . . . the location would be invalid.   On the other hand, if the veins or lodes so located by third persons exist on either side of the tunnel, but which neither cross it nor are discovered in the tunnel, they will not belong to the tunnel claimant, but to the person discovering and locating them."   And the court further says:  "What we here decide is that third persons have a right to locate any veins or lodes within a distance of three hundred feet on either side of the line of the tunnel, but not on the 'line of the tunnel,' which we hold means a line the width of the sides of the tunnel. Of course, any locations so made are at the risk of the locators, for upon the discovery of the vein or lode in the tunnel, all locations made subsequent to the commencement of the tunnel become invalid, if they are within three hundred feet on either side of the vein or lode, and within fifteen hundred feet as located along the vein or lode discovered."

From this language it would seem that the court in that case, in considering the rights of these claimants, did not entertain the view, as contended by respondent, that the locator of the lode claim, in the locality mentioned, could acquire the absolute and unconditional title thereto, while the tunnel claimant was prosecuting his tunnel according to law, until it was demonstrated that such lode would not be discovered in the tunnel. This conditional or contingent claim, the court said, might be made and held, subject to be determined against the locator by the discovery of the same vein or lode in the tunnel, and the location thereof by the tunnel claimant; and subject, also, to be determined in favor of the locator by the failure of the tunnel claimant to discover such vein in the tunnel, or by the abandonment of the tunnel scheme.   If, however, the claimant of such lode, located within the limits which might be covered by the location of a vein or lode which may be discovered in the tunnel, may procure a grant thereof by patent from the

government, or may be allowed to mine out and carry away the substance thereof, before the tunnel claimant can reach such vein, if it does lie in the line of his tunnel, what protection or encouragement is there offered to the tunnel claimant who drives his tunnel into the heart of the mountain? Or what force is given the statute which provides that "locations on the line of such tunnel of veins or lodes, not appearing on the surface, made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid?" In other words, by way of illustration, suppose a party locates a tunnel site in some portion of the mining country where lodes or veins are supposed to exist, but do not appear on the surface, and are not known to exist, and prosecutes his tunnel with reasonable diligence, and as required by law, until he has penetrated half the distance within which the veins or lodes discovered in his tunnel are reserved for him. Then suppose others come upon the ground, on either side of the line of the tunnel, as defined in the Colorado case, *supra*, and barely keeping outside of the exterior sides of the tunnel excavation, by means of drifts, they discover a valuable lode which crosses the line of the tunnel, towards the latter end thereof, and the parties thus discovering such lode locate claims thereon commencing at a point on either side of the tunnel just outside of its exterior lines, and extending a distance of fifteen hundred feet in each direction from the line of the tunnel; and such parties are permitted to mine out the ore of such lode, and obtain patents for such locations, through the forms provided by law, and the tunnel claimant, applying to the courts to stay such proceedings, is informed that he has no rights which can be acted upon until he has *discovered* said vein or lode in his tunnel. And suppose parties, by means of drifts, are able to discover and locate, and acquire by patent, all veins or lodes which will be discovered in the tunnel; and under these conditions the tunnel claimant pursues the prosecution of his tunnel with due diligence, as required by law, in the faith that the law will give him what is promised in section 2323 of the Revised Statutes of the United States, and does finally reach and discover in his tunnel said lodes, which have been discovered, located, and patented since he commenced his

tunnel, but before he reached them therein. Now, under these conditions, what will the tunnel claimant have as a reward for the expenditure of his labor and money? Why, he will have a section of vein matter the width of his tunnel, and the other portions of such veins, which the statute declares he may under such conditions locate and possess, to the same extent as if discovered from the surface, will have been patented to and in possession of others. However, under the Colorado decision, it does not seem that the tunnel claimant would have so much of the vein as would lie within the sides of his tunnel, because even that would have been previously granted to the subsequent locator, by patent, with the approval of the court.

In the case of *Back* v. *Sierra Nevada Con. Min. Co.* Idaho, Feb. 1888, 17 Pac. Rep. 73, which arose in Idaho, the conflict arising by the location of a mining claim was based upon a discovery made on the line of the proposed tunnel; but the location necessarily was not entirely on the line of the tunnel, and the court, making no distinction on the ground that the discovery happened to be on the line of the proposed tunnel, held that the tunnel claimant's rights were sufficient, although he had not discovered said lode in his tunnel, to bar defendant from proceeding to obtain a patent. In that case the court say: "It seems evident from this enactment that Congress intended to withdraw from exploration for lodes not appearing on the surface so much of the public domain as lay upon the line of such tunnel, and reserve such for the benefit of the proprietor of the tunnel, so long as he prosecutes work thereon with reasonable diligence, and to give to him the right of possession for this purpose."

Why was it provided by statute that "locations on the line of such tunnel of veins or lodes, not appearing on the surface, made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid?" It would not be of any practical benefit to the tunnel claimant to hold that such locations were invalid, only in so far as the same rests upon the plane occupied by the tunnel excavation; nor would that holding affect the locator of a mining claim on the line of the tunnel, because he would practically have remaining all he sought to take, and the

proprietor of the tunnel, under that holding, would lose the location which the law guarantees to him in case he discovered the vein in his tunnel.

The respondent in this action argues upon the construction given to the statute in the Colorado case, *supra*, that appellant, the tunnel claimant, has no right to any lode or vein, although in the line of the tunnel, until the same has been discovered in the tunnel. It is true he has no right to locate and acquire such lode in advance of discovery in the tunnel. But has he not an inchoate right in such veins, which right is kept alive by prosecution of work on the tunnel, according to law? This seems to be implied by the last clause of the statute, that "failure to prosecute the work on the tunnel for six months shall be considered as an abandonment of the right to all undiscovered veins on the line of the tunnel." The fact that said non-action on the part of the tunnel claimant should constitute an abandonment shows that it was the intent of Congress to reserve such lodes from the commencement of the tunnel, while it was prosecuted according to law.

The only question of difficulty in the application of the law is whether a party discovering a lode not appearing on the surface, and not previously known to exist, which lies in such position in relation to the tunnel that the same may be discovered therein, and taken by the tunnel claimant, can be restrained from acquiring such lode while the tunnel claimant is prosecuting his tunnel according to law. This difficulty lies in the fact that it cannot be definitely shown in advance either that the tunnel will or will not strike such lode. A lode lying near the line of the tunnel, with its strike or course at the surface extending along parallel with the line of the tunnel, may so dip in its downward course as to be in the range of the tunnel excavation. In the case at bar, however, it is shown that the strike of the lode in its course crosses the line of the tunnel, and the location made by respondent overlies the line of the tunnel. It seems to us that the intent of the statute is to provide for this condition in which the parties are placed, and reserves to the tunnel claimant the opportunity to demonstrate what veins or lodes may be discovered therein, before allowing such veins or lodes to be appropriated and taken by

another. It is argued that it is against the policy of the law to allow tracts of the mining lands to be thus held in reserve, before any mines are discovered therein. This argument is sought to be supported by pointing to the other statutes allowing locations of mining claims to be made only on discovery of valuable deposits of precious metals therein. It may be answered, however, by the observation that the policy of the law also seems to aim at the encouragement of discovery and development of mines. And so, in order to encourage parties to undertake the more hazardous enterprise of driving tunnels in localities where lodes or veins do not appear on the surface, and are not known to exist—localities which might be otherwise allowed to lie unexplored—the law has provided a reservation not provided in cases of less hazardous and less expensive manner of prospecting.

We hold that, upon the showing made, the respondent ought to be restrained from prosecuting his proceeding for a patent to the land described in plaintiff's complaint, while appellant is prosecuting such tunnel as required by law, and until it is demonstrated that such vein or lode upon which respondent has made his location of the ground in controversy will not be discovered in said tunnel, or until such tunnel rights are abandoned by cessation to prosecute the tunnel as provided by law. In that view alone, it would seem to be a proper case upon which to order judgment for appellant; but inasmuch as the special findings were submitted at the instance of appellant, and might have been questioned by proceedings by respondent had the judgment gone otherwise, we think it a proper case for reversal, and remand for new trial.

It is therefore ordered that the judgment be reversed and the cause remanded, with directions to grant appellant's motion for new trial, and that the proceedings therein conform to the views herein expressed.

*Reversed.*

Blake, C. J., and De Witt, J., concur.