RICO-ASPEN CONSOLIDATED MIN. CO. et al. v. ENTERPRISE MIN. CO.

(Circuit Court, D. Colorado. December 22, 1892.)

Nos. 2,827, 2,829, 2,838.

1. MINES AND MINING—TUNNEL LOCATIONS—LOCAL REGULATIONS.
    The location of a mining tunnel under Rev. St. § 2323, does not entitle the locator to the full length of a surface location (1,500 feet) on any vein or lode discovered on the line of the tunnel, but leaves the length of such location to be determined by the local laws or regulations; and in Colorado such length is fixed by Act 1861, § 5, (1st Sess. 166,) at 250 feet each way from the tunnel. Tunnel Co. v. Pell, 4 Colo. 507, distinguished.

2. SAME—MARKING ON SURFACE—DATE OF TUNNEL LOCATIONS.
    A miner who discovers a lode or vein while driving a tunnel, under the provisions of Rev. St. § 2323, must mark the boundaries of his claim on the surface, and file his certificate of location, but the discovery in the tunnel suffices for the usual work, such as a shaft, adit, or other opening; and the date of such location on the surface will be carried back to the date of locating the tunnel, and will thus shut out intermediate surface locations by others.

In Equity. Bills by the Rico-Aspen Consolidated Mining Company and others against the Enterprise Mining Company. Injunctions pendente lite granted, and final decree for complainants in respect to

one of the claims in controversy.   The relative position of the several claims on the surface is shown in the following diagram:

Charles J. Hughes, Charles S. Thomas, R. S. Morrison, and John Kinkaid, for complainants.

E. O. Wolcott, J. F. Vaile, C. H. Toll, H. M. Teller, and Adair Wilson, for defendant.

HALLETT, District Judge.   Complainants assert title to the ground in controversy under three locations,—one called "Vestal," made in 1879; another, called "Contention," made January 1, 1888; and the third, called "Compromise," made November 18, 1889.

These locations are in the general course east and west, and nearly coincident with the line of the Group tunnel, which is owned by respondents.   One of complainants' locations,—the Contention claim, —in its western end, comes upon the eastern extension of the tunnel; and the Compromise and Vestal, also owned by complainants, are adjacent on the south and parallel with it.

Jumbo II. is respondents' location, traversing the west ends of complainants' locations, embracing some part of each.   It extends across the line of the Group tunnel, 54 feet being northeast from that

line, and 1,446 feet southwest from that line. Respondents assert that they discovered the lode on which this location was made in the Group tunnel, and at the date of the location, June 15, 1892. After discovery they went on the surface, and set their discovery stake immediately over the Group tunnel, and marked out the Jumbo II., and recorded a certificate of location.

Assuming all the locations to be well made, if the date of its discovery be given to Jumbo II., the others are very much earlier, and they must prevail, upon the familiar rule that the first in time shall be first in right. But respondents aver that Jumbo II., having been discovered in the Group tunnel, shall have the date of the location of that tunnel, under section 2323 of the Revised Statutes; and the Group tunnel was located July 25, 1887, and thus became senior to the Compromise and Contention claims, which cover the territory contiguous to the line of the tunnel. The Vestal location is older in date, and further removed from the tunnel, and it will not be necessary to refer to it again.

There is a great conflict of testimony as to the form and position of the ore body on which Jumbo II. was located, and whether it is a vein or lode which may be located in the time and manner adopted by respondents. Under our practice, such conflicts are to be decided by a jury, and we are not at present concerned to ascertain the fact. We can only inquire as to the meaning of section 2323 of the Revised Statutes in respect of the pre-emption of lodes and veins lying in the course of a tunnel, by locating the tunnel and prosecuting work on it in the manner prescribed; and certainly the language of the act, both affirmative and negative, seems to give to the locator some such right.

It is first declared that "the owners of such tunnel shall have the right of possession of all veins or lodes within 3,000 feet from the face of such tunnel on the line thereof not previously known to exist;" and this is followed by the provision that "locations on the line of such tunnel of veins or lodes not appearing on the surface, made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid." Clearly enough this is a grant of lodes and veins on the line of the tunnel, and the only difficulty is in ascertaining the extent of the grant. The supreme court of this state interprets the act as giving only so much of such veins and lodes as may be in the tunnel itself. Tunnel Co. v. Pell, 4 Colo. 507. But this seems to reduce the grant to a point of insignificance which deprives the act of all force and meaning. Certainly no one would be at the trouble and expense of driving a tunnel through a mountain for such small segments of lodes and veins as may be in the bore of the tunnel. On the other hand, respondents contend that the grant is of the length of a surface location in any direction from the line of the tunnel, and, as stated above, almost the entire length of Jumbo II. is in a southwesterly direction from that line. Under this construction the location of a tunnel, followed by some lazy and perfunctory work twice in the year, will have the effect to withdraw from the public domain a tract 3,000 feet square, or something more than a half section of land;

and this in the face of the earlier declaration of the statute that "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." This view is so far inconsistent with the general policy of the law, which forbids the granting of large areas of valuable mineral lands to one person or company, that it seems impossible to accept it.

If we look into all the acts of congress relating to mines of precious metals, we shall find that it has not been the practice or policy to define absolutely the length or width of mining claims. The act of 1865, which is the first on the subject, declares somewhat ambiguously for "the law of possession," meaning the local rules and customs of miners. It has nothing as to the length or width of claims. 13 St. 441. The act of 1866 (section 4) provides "that no location hereafter made shall exceed 200 feet in length along the vein for each locator, * * * together with a reasonable quantity of surface for the convenient working of the same as fixed by local rules." 14 St. 252. The act of 1872, which is continued in Revised Statutes, provides as follows:

"A mining claim located after the passage of this act, whether located by one or more persons, may equal, but shall not exceed, 1,500 feet in length along the vein or lode. * * * No claim shall extend more than 300 feet on each side of the middle of the vein at the surface, nor shall any claim be limited by any mining regulation to less than 25 feet on each side of the middle ·of the vein at the surface, except where adverse rights existing at the passage of this act shall render such limitation necessary." 17 St. 91.

It will be observed that only the maximum length and width of claims is given in any of these acts, and the exact dimensions are left to the rules and regulations of miners, or to the local legislation of the states. This accords with the general policy of congress, which has not been to provide a complete code of laws for taking, holding, and acquiring title to mining claims, but to recognize and establish the usages and customs of miners in mining districts, and the laws of the several states relating to such matters. Jackson v. Roby, 109 U. S. 440, 3 Sup. Ct. Rep. 301; Jennison v. Kirk, 98 U. S. 457. Looking to the general policy of the government in dealing with its mineral lands, it seems highly improbable that congress intended to fix the length of a location made upon a discovery in a tunnel, and we are strongly persuaded to say that in this instance, as in others, the matter is subject to local regulation. In this view, the words of section 2323, "to the same extent as if discovered from the surface," mean only that the location shall be as good as upon a discovery from the surface. Unquestionably, in the case of a location from a discovery in a tunnel, it is as necessary to mark the boundaries on the surface and file a certificate for record as in any other case, because there is no other method of acquiring title to a mining claim; but, in such case, the locator is not required to sink a shaft from the surface to the depths below in which the lode may be found. The discovery in the tunnel suffices for the usual work on the surface, such as a shaft, adit, or other opening to the lode; but all other things must be done as in the case of an ordinary location on the surface.

In this view of the meaning and effect of section 2323 of the federal statutes, it is indeed true that, without local regulation as to the length of a claim founded on a discovery in a tunnel, nothing would pass but the line of the tunnel itself. And in the Corning Tunnel Company's Case the statute of the state on that subject was not referred to. Indeed, it would seem from the court's statement of the case that the law of the state was not at all considered, for it is said that appellant's "claim is based entirely upon the right of tunnel owners under section 4 of the act of congress." If the act of 1861 had been presented to the supreme court of the state, there is every reason to believe that it would have been recognized as a sound and effective supplement to the act of congress, on which alone the opinion of the court proceeds. The act of 1861 (section 5) provides that a tunnel locator shall have 250 feet each way from the tunnel on all lodes discovered in the tunnel. 1st Sess. 166. It has survived through all revisions of the statutes to this time. No reason is perceived for declaring it obsolete. On the contrary, it appears to be of the highest obligation, as one of those laws relating to mines which has endured the scrutiny of many successive legislative assemblies of the state, and has repeatedly received the sanction of congress. A similar act of the state of Montana (Comp. St. Mont. 1887, § 1488) was recognized and enforced by the supreme court in Mining Co. v. Brown, 11 Mont. 370, 28 Pac. Rep. 732. If, then, we give effect to Jumbo II. as a discovery in the Group tunnel, under section 2323 Rev. St., in connection with the act of the state of 1861, we are able to give it the date July 25, 1887, when the tunnel was located, and the length 250 feet southwesterly from the tunnel. So understood, it traverses the end of complainants' Contention claim, and a small part of the Compromise claim.

As before stated, there are questions of fact touching the form and extension of the ore body, and the validity of the several locations, which must be referred to a jury. In the cases based on these titles the usual orders for injunctions pending the controversy will be entered. In the view now adopted, Jumbo II. does not extend into the Vestal territory, and we can enter a final decree for complainants in the case, based on that title, without a trial at law.