THE CORNING TUNNEL, etc., Co. v. PELL et al.

1. The right of possession of veins or lodes granted by section four of the act of Congress of May 10, 1872, to tunnel owners, is dependent, among other things, upon *discovery* of the vein or lode in the tunnel. The effect of section two of the act is to give a party running a tunnel for any purpose, whether for prospecting or development, the right to pre-empt and locate any and all lodes not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface.

2. Under the act, the "line of the tunnel" does not mean the entire width and length of the surveyed tunnel site, nor does the act provide for or authorize a tunnel site survey and location fifteen hundred feet in width. The policy of the government has been to prevent monopoly of its mineral lands, or its ownership in large tracts.

3. The "line" of the tunnel, having reference to the subject it was intended to describe, designates a width marked by the exterior lines or sides of the tunnel.

### Appeal from District Court of Arapahoe County.

The facts are sufficiently stated in the opinion.

Messrs. Belford & Reed, for appellant.

Messrs. H. M. & W. Teller & G. B. Reed, for appellees.

Elbert, J.. In November, 1875, the appellees made application under the law for a patent to the "Slide lode." The appellant filed an adverse claim and brought ejectment in the district court for the county of Boulder to determine the title. A change of venue was taken to the district court for the county of Arapahoe, where a trial was had to the court, and on motion of appellees a judgment of nonsuit was entered. The appellant claims by virtue of its tunnel site location, made Sept. 18, 1872, under the act of Congress of May 10, 1872, and by virtue of the work done in and upon its tunnel.

This tunnel site as claimed may be described generally as extending along a center-line running from the face of the tunnel 3,000 feet, with side lines parallel with the center line, and each 750 feet from it, making a parallelogram 1,-500x3,000 feet.

The tunnel appears to have been worked with reasonable diligence, and never to have been abandoned.

The appellees claim under the same act, by virtue of discovery, development and location. The location was made in August, 1875, and the appellees have been in continuous possession ever since, claiming title thereto.

The Slide lode is 1,500 feet in length and crosses the center line of the tunnel site nearly at right angles. The discovery shaft is near, but not on the center line, being about 55 feet therefrom.

The evidence does not show, nor was there any attempt to show that the Slide lode had been reached or cut by the tunnel; nor is there any claim that the appellant ever located or pre-empted it, or ever had actual possession of it. Its claim is based entirely upon the right of tunnel owners under section 4 of the act of Congress mentioned. The section is as follows:

" That when any tunnel is run for the development of a vein or lode, or for the discovery of mines, the owners of such tunnel shall have the right of possession of all veins or lodes within 3,000 feet from the face of such tunnel on the line thereof not previously known to exist, *discovered in such tunnel* to the same extent as if *discovered* from the surface ; and locations on the line of such tunnel, of veins or lodes not appearing on the surface, made by other parties, after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid ; but failure to prosecute the work on the tunnel for six months shall be considered as an abandonment of the right to all undiscovered veins on the line of said tunnel."

The right of possession of veins or lodes here granted to the tunnel owner is dependent, among other things, upon *discovery* of the vein or lode in the tunnel. Such is the force and effect of the language of the section. " The owners of such tunnel shall have the right of possession of all veins or lodes * * *. *discovered in such tunnel*" and " to the same extent as if *discovered* upon the surface." The purpose of the section, as of the entire act, was to fix the rights and reward the labors of the *discoverer*. The same purpose is manifest and the same rule prescribed with regard to surface claims in section 2 of the act, in the provision that " no location of a mining claim shall be

made until the *discovery* of the vein or lode within the limits of the claim located." The effect of the section is to give a party running a tunnel for any purpose, whether for development or for prospecting, the right to pre-empt and locate any and all lodes not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface.

The right of possession being dependent upon discovery in the tunnel, it follows that it could not attach prior to discovery, and that the appellant, therefore, had no right of action, unless by reason of the location of the Slide lode upon the line of its tunnel, if such was the fact. The right of the tunnel owner to the possession of the "line of his tunnel," as well as the extent of this right, are independent questions.

It is claimed that the location of the Slide lode is on the line of the appellant's tunnel, and that for the line of its tunnel, as well as for all blind lodes therein not previously known to exist, ejectment lies at any time after commencement of work on the tunnel.

The argument is founded upon the provision that "locations on the line of such tunnel of veins or lodes not appearing on the surface made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid."

The "line of the tunnel" it is insisted, as here used, means the entire width and length of the surveyed tunnel site—in this case 1,500 x 3,000 feet ; that within these limits, after the commencement of the tunnel, and while it is prosecuted with reasonable diligence, no valid location can be made of a vein or lode not appearing upon the surface. In the first place this section does not provide for or authorize, nor do we know of any law that provides for or authorizes a tunnel site survey and location 1,500 feet in width.

In the second place, the results of such a construction as is contended for by appellants forbid its adoption, unless the language clearly indicates such to have been the legis-

lative will. In this case, the tunnel site location would withdraw from the explorations of prospectors over one hundred acres of mineral lands. A very limited number of such locations would cover and monopolize, in most cases, an entire mining district—giving to a few tunnel owners, all its mines, not upon the condition of discovery and development, but upon the easy condition of a *commencement* of work on the tunnel, and its prosecution with reasonable diligence.

The policy of the general government has been to prevent monopoly of its mineral lands, or its ownership in large tracts. But for the existence of this policy, there was but little or no reason for an abandonment of its system of surveys and pre-emptions applicable to agricultural lands, and the adoption as to its mineral lands of a system, that as to surface claims at least, limits mining locations to an inconsiderable acreage, appendant to a discovered lode. The construction claimed is in contravention of this policy; nor can it be justified by the language of the section.

Line, as a term of surveying, is that which has length without breadth, but, as used in this section, having reference to the subject it was intended to describe, we think it designates a width marked by the exterior lines or sides of the tunnel. A greater width than this it cannot be fairly said to imply. The line of the tunnel being the width of the tunnel, the location (in the sense that it is here used, of initial point of location or discovery shaft) of the Slide lode, was not on the line of the appellant's tunnel.

What the appellant's rights would have been had this fact been otherwise, it is not necessary to determine. The location not being on the line of the tunnel, it is immaterial whether the lode appeared upon the surface or not, as in either case the evidence did not show any right upon the part of the appellant.

The judgment of the court below is affirmed with costs.

*Affirmed.*