ELLET, APPELLANT, v. CAMPBELL, APPELLEE.

1. STATUTORY CONSTRUCTION.

The meaning and application of a statute are to be ascertained by con-
sidering its origin, history, purposes and objects, as well as its
subject-matter and the language employed.

2. TUNNEL LOCATION.

When a tunnel claim has been duly located and the owner thereafter
discovers a mineral lode therein, as specified in section 2323 U. S.
Rev. Statutes, he is not bound to make another discovery and loca-
tion of the lode from the surface in order to be protected against
a subsequent surface location of the same lode.

3. MINING LAWS.

While the acts of congress leave the width of mining claims upon the surface subject to local regulations within certain limits, the length and depth may not be thus regulated.

4. LENGTH OF TUNNEL LOCATION.

Where the location of a tunnel and the discovery of a lode therein have been made subsequent to the act of May 10, 1872, the discoverer is entitled to claim 750 feet of the lode each way from the point of discovery, or "1500 feet in length along the vein or lode."

*Appeal from the District Court of Boulder County.*

THE appellant, Alfred S. Ellet, was plaintiff below, and by his guardian brought this suit in the district court in support of an adverse claim to a certain mineral lode or vein situate in Gold Hill mining district, Boulder county, Colorado.

The cause was tried in the district court upon an agreed statement of facts, in substance as follows :

That the tunnel claim or location under which plaintiff claims title to the mining lode in controversy, was and is known by the name of the Corning tunnel.

That on the 18th day of September, A. D. 1872, George C. Corning, and others, citizens of the United States, duly located a tunnel claim, under the provisions of the acts of congress and the laws of the territory (now state) of Colorado relating to tunnel claims, 3000 feet in length, in Gold Hill mining district, in the county of Boulder, and then territory (now state) of Colorado, by posting a plain notice at the point of commencement of said tunnel, giving the names of said locators, and the proposed course and length of said tunnel, and by placing along the line thereof for 3000 feet from said point of commencement at intervals of 200 feet stakes plainly marked with the name of said tunnel, and also by running a line on each side of the line of said tunnel, and parallel therewith, 750 feet distant therefrom, and placing stakes thereon at intervals of 200 feet, and by placing at the corners of said tunnel site monuments marked with the name of said tunnel, and by causing to be recorded in the office of the clerk and recorder of said Boulder county, on the 18th

day of September, 1872, a certificate of the location of said tunnel, stating therein the point of commencement and the course and length of the line thereof and the names of said locators.

That thereafter and before July 9, 1873, the locators established the face of said tunnel, and expended in the work and labor required therefor the sum of $1,000, and ran said tunnel 130 feet from the face thereof, seven feet high and six feet wide at an expenditure of $5,000 ; and thereupon placed at the face of said tunnel a plain sign or notice giving the names of the locators as the owners thereof, and a plat of said tunnel claim, giving the location and boundaries thereof, and the course and distance of the line of said tunnel, and the height and width of said tunnel bore.

That on July 9, 1873, the said locators filed and caused to be recorded in the office of the clerk and recorder of said Boulder county a certificate of the location of said tunnel, stating the point of commencement and the course and length of the line thereof, as the same were respectively stated upon the notice posted at the face of said tunnel, together with an affidavit stating the amount of work done and money expended upon said tunnel, and that it was *bona fide* their intention to prosecute the work on said tunnel for the discovery of mines and development of the same.

That the said tunnel so located is described as follows :

" Beginning at a nail driven in the railway track thirteen feet north eight degrees thirty minutes west from the mouth of the Corning Tunnel the same being the place of beginning of said Corning Tunnel, whence the quarter section corner in the east line of section 1, town 1, north range seventy-two west of sixth P. M., bears north forty-four degrees forty-four minutes east, three thousand five hundred and fifty-five feet, thence south two degrees east, three thousand feet and seven hundred and fifty feet on each side of said line, together with appurtenances."

That the locators and the several successive owners of said tunnel location have continuously and diligently prosecuted

the work of running said tunnel, and have expended therein
during each year since the location thereof more than one
hundred dollars, and have made a total expenditure of one
hundred thousand dollars ($100,000), and have erected large
and extensive improvements at the face of said tunnel, for the
convenient working of the same, of the value of one thou-
sand dollars.

That on February 3, 1875, the Corning Tunnel Company,
a corporation duly organized, was the owner of said Corning
tunnel location by sundry mesne conveyances from the loca-
tors thereof, and that said Tunnel Company, while prosecut-
ing the work in said tunnel, cut and discovered within said
tunnel, and upon the line thereof at a distance of 594 feet
from the face of said tunnel, a vein of mineral-bearing rock
in place, which was named the Bonanza lode, and on said
February 3d they posted at the face of said tunnel a plain
sign and notice, giving the name of said vein, the point of
discovery within said tunnel, the general course of said vein
from the point of discovery, and claiming 750 feet of said
vein on each side of the line of said tunnel; that said Bo-
nanza lode did not appear upon the surface of the ground,
and was not known to exist prior to its discovery by the
Corning Tunnel Company, as above stated.

That on February 9, 1875, said Tunnel Company filed and
caused to be recorded in the office of the clerk and recorder
of the county of Boulder a location certificate of said Bonanza
lode, giving the name of the lode so discovered and the name
of said company as the locator thereof, the point in the line
of said tunnel at which said lode was discovered, and claim-
ing seven hundred and fifty feet of said vein upon each side
thereof, together with the general course of said vein.  The
location certificate was as follows:

" Territory of Colorado, County of Boulder:

" Know all men by these presents, that we, the Corning
Tunnel Company claim by right of discovery, and by right of
location, 1500 feet, linear and horizontal measurement, on
the Bonanza lode, along the vein thereof, with all its dips,

variations and angles, together with the amount of surface necessary for working the same and allowed by law ; 750 feet of said lode so located lying and being easterly of the discovery on said lode, and 750 feet being westerly of said discovery, said lode being more particularly described as follows, to-wit : Beginning at a point in the Corning tunnel 594 feet from the face of said tunnel and extending from said point 750 feet easterly, and 750 feet westerly. The bearing of said lode is about north 78 degrees east. This lode was discovered in the Corning tunnel, and it is claimed, under the provisions of section 4, of an act of congress approved May 10th, 1872, in Gold Hill mining district. Said lode was discovered and was located on the 3rd day of February, A. D. 1875.

(Signed) " FREDERICK A. SQUIRES, Pres.
" DANIEL A. ROBINSON, Secy."

(Indorsed on back) : " Location certificate, Bonanza lode. Territory of Colorado, county of Boulder, ss. Filed for record this 9th day of February, A. D. 1875 at 2¼ o'clock P. M. Recorded in book ' U' page 265. (Signed) A. E. Lea, Recorder."

It is admitted that, at the time said certificate was made and filed, Frederick A. Squires was president, and Daniel A. Robinson was secretary of said Corning Tunnel Company.

That said Bonanza lode was never staked on the surface, nor was any discovery shaft sunk, or work done upon the said lode upon the surface of the ground, nor was the point on the surface marked under which the discovery point of said lode might be found.

The plaintiff was and is a citizen of the United States, and was duly authorized to bring this suit by his guardian, and that by sundry mesne conveyances he had become and was the owner of said tunnel claim and of said Bonanza lode discovered therein ; and that, at all times since the discovery of said Bonanza lode, the owners of said tunnel claim had continuously and diligently prosecuted work on said lode, and had expended thereon each year the sum of $100.

That on July 10, 1886, the defendant Campbell, and one

Cyrus Taylor, with full knowledge of the location of said tunnel claim and of the discovery and location of said Bonanza lode as aforesaid, made a location of a certain lode called the J. L. Sanderson lode; that the Bonanza and the J. L. Sanderson locations are different locations made on *one and the same lode and vein;* and that the discovery cut by which the said J. L. Sanderson lode was discovered is 200 feet to the east of the line of the bore in the said Corning tunnel; and that Cyrus Taylor and defendant Campbell knew at the time they assumed to discover and locate the said J. L. Sanderson lode that the Corning Tunnel Company had discovered and located the Bonanza lode as above stated.

The location certificate of the J. L. Sanderson lode was as follows :

"Location certificate of the J. L. Sanderson lode, filed for record August 30, A. D. 1886, at 12:25 o'clock P. M.

"E. J. MORATH, Recorder.

"Know all men by these presents, that we, the undersigned, have located and hereby claim by right of discovery and location, fifteen hundred feet linear and horizontal measurement on the J. L. Sanderson lode, together with all veins, lodes, ledges and surface ground within the lines of said claim, as hereinafter stated, seven hundred and fifty (750) feet on said lode running north 73 degrees east from the center of the discovery shaft. on said lode, and seven hundred and fifty (750) feet running south, 73 degrees west therefrom. Said lode being situated in Gold Hill mining district, Boulder county and state of Colorado, and more particularly described as follows :

"Beginning at a post set in a mound of stones marked southwest cor. No. 1, J. L. Sanderson lode Var. 14 degrees, 30 minutes east, whence cor. No. 1, survey No. 353, Alturess lode bears south 75 degrees east 240 feet; thence north 17 degrees west, 150 feet to northwest side line center post, 1500 feet to northeast cor. No. 3; thence south 17 degrees east, 150 feet to southeast cor. No. 4; thence south 73 de-

grees west, 750 feet to southeast side line, center post, 1500 feet to cor. No. 1, place of beginning, and forming a portion of the north half ($\frac{1}{2}$) of section 12, township one (1), north of range seventy-two (72), west of the sixth principal meridian. Said lode was discovered tenth July, A. D. 1886, and was located twenty-sixth August, 1886.

" CYRUS TAYLOR,

" DAVID F. CAMPBELL.

"Date of certificate, twenty-sixth August, 1886."

That said Taylor and the defendant Campbell did everything requisite to be done in discovering and marking the point of discovery of said J. L. Sanderson lode, and in marking the surface boundaries thereof, and that they fully complied with the laws of the state of Colorado and of the United States regarding the discovery and location of lodes upon the public mineral domain, and that they have done the requisite annual labor thereon since its discovery, and that they have kept their title good, unless plaintiff has the better right and title to the ground under the name of the Bonanza lode.

The district court decided in favor of appellee Campbell. This appeal is brought to review that decision.

Messrs. ROGERS, SHAFROTH & WHITFORD, for appellant.

Mr. L. C. ROCKWELL, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

This was an adverse suit, instituted in behalf of appellant by his guardian, " to determine the question of the right of possession " to a certain mineral vein or lode.

Appellee Campbell had filed his application for a patent to said lode, basing his claim upon a surface discovery and location. The adverse claim of appellant is based upon a prior discovery and location of the same lode in a tunnel. Appellant does not claim that he is entitled to a patent to

the lode as the result of this litigation; but he claims " the right of possession" thereto by virtue of prior discovery and continued compliance with the act of congress providing for the running of tunnels, " for the development of a vein or lode, or for the discovery of mines." Section 2323, Rev. Stats., U. S.

Having all the rights of the prior discoverer and locator of such lode in a tunnel duly located, appellant claims that he is entitled to be protected in such right of possession against any and all junior locators of the same lode; and, hence, that appellee is not entitled to a patent upon his junior location. Section 2326 Rev. Stats. U. S., Amendment of March 3, 1881.

The facts of the case are admitted. By the agreed statement it appears that appellant is the owner of a valid tunnel location duly made upon unappropriated public domain under the act of congress and the laws of Colorado; that such tunnel was commenced in September, 1872, and that work therein was thereafter prosecuted with diligence for the discovery of mineral veins or lodes; that the lode in controversy was discovered in said tunnel on February 3, 1875; that said lode did not appear upon the surface, and was not previously known to exist; that upon its discovery it was, by the tunnel owners, located by posting at the face of the tunnel a plain sign and notice giving the name of the vein, the point of discovery within the tunnel, the general course of the vein from the point of discovery, and claiming 750 feet of said vein on each side of the line of the tunnel; and that thereafter, and on February 9, 1875, a location certificate of said lode, specifying the matters aforesaid, was duly recorded in the office of the clerk and recorder of the proper county. The tunnel location was duly made, it boundaries were plainly marked upon the surface, and a certificate thereof was duly recorded as a mining claim; but the lode in controversy as discovered therein was not otherwise separately marked, nor was any work done thereon upon the surface.

In behalf of appellee it is contended that appellant's claim

to the lode is wholly without right. It is broadly asserted that the discovery of a lode in a tunnel in pursuance of section 2323, cited above, cannot, under any circumstances, give the discoverer any right to the lode, unless accompanied by a surface location in accordance with the statutory provisions. In other words, it is contended that a tunnel location, however perfectly made, described and recorded, even when accompanied by a complete notice, description and record of the lode discovered in the tunnel, is of no avail to protect a prior discovery in the tunnel against a junior surface location of the same lode.

In determining the controversy thus presented, it is necessary to consider, interpret, and, if necessary, construe the statutory enactments applicable to the discovery and location of mineral lodes. Section 2323, above cited, commonly called the Tunnel Site Act, is specially applicable to lodes and veins discovered in tunnel locations ; it reads as follows :

" Sec. 2323. Where a tunnel is run for the development of a vein or lode, or for the discovery of mines, the owners of such tunnel shall have the right of possession of all veins or lodes within three thousand feet from the face of such tunnel on the line thereof, not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface ; and locations on the line of such tunnel of veins or lodes not appearing on the surface, made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence shall be invalid; but failure to prosecute the work on the tunnel for six months shall be considered as an abandonment of the right to all undiscovered veins on the line of such tunnel."

Is this section the only one applicable to tunnel discoveries and locations, or must the discoverer of a lode in a tunnel, in order to protect his claim, comply strictly with other statutory provisions relating to the discovery and location of mining claims ? In resolving this question, as in other cases of like nature, the meaning and application of the statute is to be ascertained by considering its origin, its history, its

purposes and objects, as well as its subject-matter and the language employed.

By the act of congress of July 26, 1866, the mineral lands of the public domain, surveyed and unsurveyed, were opened to exploration and occupation by citizens of the United States. Practically, the act provided for giving away mines of gold and silver and other precious mineral deposits to those who would seek for and find them. Every encouragement was offered to those who would undertake to discover and develop the mineral resources of the country, and thus add to the volume of the precious metals. The nation had just emerged from a great civil war; and an increase of the money metals was necessary as a basis for the monetary system of the government; such increase was also essential to the prosperity of a free and enterprising people just entering upon a new era of national and individual life. The liberal acts of congress upon the subject of mines and mining have been supplemented by a liberal construction of such acts, by the national judiciary, as well as by the local courts of the mining states and territories.

It was not until the revision of 1872 that any general act was passed to encourage the discovery and development of mineral lodes by means of tunnels. Such was the date of the passage of the tunnel site act. What object or purpose could have induced congress to enact section 2323 ? There is but one answer: It was to encourage the discovery of the hidden mineral wealth which was believed to exist in the deepest recesses of the mountains. What consideration was adequate to compensate those undertaking a work requiring such large expenditures of time and money and involving such risks and dangers ? Nothing short of the guaranty of the government that they should hold and enjoy the fruits of their discoveries upon compliance with the terms of the statute. Every consideration, therefore, requires that the Tunnel Site Act should receive the most liberal construction consistent with reason and the language employed.

Section 2323 was obviously designed to encourage the

running of tunnels for the discovery and development of veins or lodes of the precious metals not appearing on the surface, and not previously known to exist. Little encouragement would the act give, if the discoverer of a lode in a tunnel were bound also to find the apex and course of such vein, uncover the same from the surface, sink his location shaft thereon, mark the boundaries thereof, and record his certificate of such surface location the same as if he had made the original discovery from the surface.

The location of a lode from the surface is always attended with more or less difficulty and uncertainty. Mistakes occur in the location of boundary lines, even where the apex and course of the vein lie comparatively near the surface. These difficulties and uncertainties are liable to be greatly increased where a lode is discovered by means of a tunnel driven hundreds and thousands of feet into the heart of the great mountain. To require the discoverer of a lode in a tunnel to prospect for the vein upon the surface, and uncover and mark its boundaries so as to include its apex and course within the lines of the surface location, would be to require a work of supererogation; for no surface location is necessary for the convenient working of a lode discovered in a tunnel location already made. Such requirement would unnecessarily burden the tunnel locator and discoverer; to the great labor and expense of tunneling as a means of location and discovery, it would add the labor and expense devolving upon the ordinary surface discoverer and locator. Besides, such a requirement would subject the discoverer of a lode in a tunnel to the hazard of a race for its surface location; and thus the discoverer might have the fruits of his labor wrested from him by a surface locator who had done nothing and expended nothing in the original discovery.

The admitted facts of the present case well illustrated the hardship of the construction contended for by appellee. The tunnel owners have expended $100,000 in the running and development of their tunnel location and the discovery of the lode in controversy. Eleven years after such discovery,

appellee, having full knowledge of the lode discovered and claimed under the tunnel location, proceeds to make a surface location of such lode, and thereupon claims the same as his own to the exclusion of the tunnel claimant.

The suggestion of counsel, that the discoverer of a vein in a tunnel may mark the boundaries thereof, locate the same on the surface, and record his certificate without uncovering or ascertaining the position of the apex or course of the vein, seems deserving of but little consideration. For, if a discovery and location from the surface be necessary, in case of a discovery in a duly located tunnel claim, then the surface location must be correct in order to afford adequate protection. But in case of a discovery in the depths of a great mountain, a surface location without ascertaining the position of the apex or course of the vein would be a chance location which, if it did not in fact contain such apex and course, would avail nothing against a location made by an exploration and uncovering of the vein from the surface.

Section 2323 does not provide that the discoverer of a vein in a tunnel shall make a surface location thereof; but it does declare that locations made by other parties on the line of such tunnel shall, under certain circumstances, be invalid. Thus the purpose of congress to protect the discovery of veins or lodes in tunnels is clearly manifest. In view of the purpose and language of the several enactments relating to the discovery and location of mineral lodes, and the consequences which would flow from a different construction, we feel constrained to hold that when a tunnel owner has duly located his tunnel claim and thereafter discovers a mineral lode therein, according to all the conditions specified in section 2323, he is not bound to make another discovery and location of the lode from the surface in order to be protected against a subsequent surface locator of the same lode. Thus, we interpret the section to mean what its special words plainly import, without unnecessarily qualifying their meaning by the general language of other sections.

A tunnel location has been called a " tunnel claim " by the

highest judicial authority; and it seems that a valid tunnel location may inure to the benefit and protection of mineral lodes discovered in such tunnel. In the present case the tunnel claim was duly located by reference to U. S. government surveys; a lode not previously known to exist, and not appearing on the surface, was discovered in such tunnel, and on the line thereof, while work in the tunnel was being diligently prosecuted for such purpose; notice of the discovery and location of the lode was immediately posted at the mouth of the tunnel, and the location certificate was duly recorded, describing the lode with reference to such tunnel location. Under such circumstances, in our opinion, appellant as successor in interest to the discover has the right of possession of such lode, and is entitled to be protected in such right against appellee, a junior surface locator of the same lode. The views we have thus endeavored to express seem to us to be in harmony with the opinion of the supreme court of the United States in the case of the *Glacier Mining Co. v. Willis*, 127 U. S. 471–480.

Counsel for appellee contends that the case of *The Corning Tunnel Co. v. Pell et al.*, 4 Colo. 507, decided by this court in 1878, is opposed to the view expressed in this opinion. The Pell case was an action of ejectment brought by the Tunnel Company in support of an adverse claim; no equitable relief was invoked; nor could any be had according to the practice under which that suit was instituted. At the trial of that case in the lower court there was no evidence, and no attempt to prove, that the lode in controversy had been discovered in the tunnel. Upon that ground it was held that the Tunnel Company had not acquired such right of possession as would enable it to maintain ejectment; and so the judgment of nonsuit was granted. Upon appeal the judgment of nonsuit was affirmed upon the same ground, but the court in its opinion discussed and passed upon several questions concerning the rights of tunnel site claimants, which, though perhaps fairly presented by the record, were not really necessary to the determination of that appeal. What the

decision would have been if the lode had been actually discovered by the Tunnel Company in the tunnel, and on the line thereof, before suit brought, and before Pell discovered and located the lode, cannot be certainly known. Pell's location was within the limits of the tunnel location, but not on the line of the tunnel. The court expressed the opinion that the Tunnel Company did not have the exclusive right of possession to the whole tunnel location 1500 × 3000 feet, and that as the location by Pell was not upon the line of the tunnel, that is, the line of the actual bore or excavation, and as the Tunnel Company had not discovered the lode in the tunnel, it could not maintain ejectment to recover the lode.

If the Tunnel Company had discovered the lode in the tunnel and on the line thereof, prior to its discovery by Pell, and other conditions had been the same as in this case, the Tunnel Company's right of possession to the lode might have been maintained to the same extent as if discovered from the surface, without a surface location in addition to the tunnel location. If the views expressed in the Pell case will not bear such a construction, we must decline to be governed by them under the facts admitted in this case.

Section 2323 has been considered and construed by the appellate courts of some of our sister states and territories. See *Hope Mining Co. v. Brown,* 7 Mont. 550 ; *Hope Mining Co. v. Brown,* 11 Mont. 370 ; also, *Back v. Sierra Nevada Mining Co.,* 17 Pac. Rep. (Idaho) 83. It would not subserve any useful purpose to discuss these decisions at length. Though based upon facts somewhat different from the facts of the present case, they are in the main consistent with the views expressed in this opinion.

What is the extent of the tunnel owner's right of possession to a vein discovered in a tunnel ? The language of the statute is, that he shall have the right of possession " to the same extent as if discovered from the surface." In our opinion the words " same extent " mean the same extent " along the vein or lode." While the acts of congress leave the width of mining claims upon the surface subject to local regulations

within certain limits, the length and depth may not be thus regulated. In this case the location of the tunnel and the discovery of the lode having been made subsequent to the passage of the act of congress of May 10, 1872, the discoverer was entitled to claim 750 feet of the lode each way from the point of discovery, or, in the language of the statute, " 1500 feet in length along the vein or lode." Secs. 2320, 2322, Rev. Stats. U. S. ; Session Laws Colo. 1874, p. 185; Gen. Stats. Colo. 1883, sec. 2397 ; Morrison's Mining Rights (7th ed.), 22, 23.

In the case of the *Glacier Mining Co. v. Willis, supra,* which was in many respects similar to the present case, the tunnel claimant was restricted to " 250 feet each way from said tunnel, on each lode discovered; " but in that case the location was made prior to the act of May 10, 1872, regulating the length of mining locations, and so the local laws of Colorado governed as to the length of the claim. Session Laws, 1861, p. 166; Gen. Laws, p. 627.

Our conclusion is, that the discovery and location of. the lode in controversy, as claimed by appellant, must be held valid, and that the subsequent location of the same lode made by appellee, being " 200 feet to the east of the line of the bore of the Corning tunnel," must be held invalid.

The judgment of the district court is reversed and the cause remanded, with directions to enter judgment in favor of appellant in accordance with this opinion.

*Reversed.*