ENTERPRISE MIN. CO. v. RICO–ASPEN CONSOLIDATED MIN. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1895.)

No. 390.

1. TUNNEL MINING CLAIMS.
    From the time of the location and commencement of his tunnel, under section 4 of the act of May 10, 1872 (Rev. St. § 2323), the owner has the inchoate right to the possession of every blind vein or lode within 3,000

feet from the face of such tunnel on the line thereof that was not known to exist when the tunnel was located and commenced, contingent only upon the diligent prosecution of the work on the tunnel and the subsequent discovery of the vein or lode therein.

2. SUBSEQUENT DISCOVERY FROM SURFACE.

No discovery or location of such veins or lodes from the surface subsequent to the location and commencement of the tunnel can deprive the owner of the tunnel claim, who diligently prosecutes his work therein, of these rights.

3. EXTENT OF CLAIM.

Upon the discovery of such a vein in the tunnel, while the work upon it is being prosecuted with reasonable diligence, such owner is entitled to the possession of such lode or vein to the same extent along the lode or vein as if discovered from the surface. He is entitled to the possession of any 1,500 feet in continuous length along such lode or vein which includes his point of discovery in the tunnel. The limitation of the extent of the right of the owner of a tunnel claim to the veins discovered therein to 250 feet each way from the tunnel, imposed by section 5 of the act passed by the Colorado legislature in 1861 (Sess. Laws Colo. 1861, p. 166; Mills' Ann. St. § 3141), was removed by the act of congress of May 10, 1872 (17 Stat. 92, c. 152), and the act of the legislature of Colorado of 1874 (Sess. Laws Colo. pp. 185, 187, 190; Mills' Ann. St. § 3148).

4. ADVERSE CLAIM—ESTOPPEL.

It is the duty of the owner of the tunnel claim to present and litigate his adverse claim to any such blind vein or lode that has been discovered and is known to exist within the mining claim located from the surface, when the owners of the latter make application for their patent under sections 6 and 7 of said act (Rev. St. §§ 2325, 2326); and if, in the absence of fraud or mistake, he fails to do so, his rights as against such claimants will be lost. When, however, the blind lode or vein is not known to exist, and has not been discovered when the application for a patent is made, and the claim of the locators from the surface lies parallel to the line of the tunnel, these sections of the act have no application, because it is impossible, in such a case, to fairly litigate the contingent inchoate right of the owner of the tunnel, and he will not be estopped by his failure to present an adverse claim.

Appeal from the Circuit Court of the United States for the District of Colorado.

The appellant, the Enterprise Mining Company, a corporation, is the owner of the Group tunnel, a tunnel mining claim, under section 4 of the "Act to promote the development of the mining resources of the United States," of May 10, 1872 (17 Stat. 93, c. 152; Rev. St. § 2323). It discovered a blind vein in this tunnel, which was not known to exist when the tunnel site was located or when the excavation of the tunnel was commenced. This vein is called the Jumbo No. 2 vein, and it crosses one corner of the Vestal lode mining claim, which is based on a discovery from the surface subsequent to the commencement of the tunnel, and is owned by the appellees the Rico-Aspen Consolidated Mining Company, a corporation, and its associates. The controversy in this case is over ore in this Jumbo No. 2 vein, within the limits of the Vestal claim. The appellees filed a bill to enjoin the Enterprise Company from removing it, and the Enterprise Company answered and filed a cross bill, praying for like relief against the Aspen Company. On the final hearing, the court below dismissed the cross bill, and entered a decree for the relief sought by the original bill. The appeal is from this decree.

This decree was rendered on the theory that the Enterprise Company could not maintain its claim to the ore here in question if the allegations of its pleadings were conceded to be true. The decree, therefore, has the effect of a decision sustaining a demurrer to the pleadings of the appellant. Rico-Aspen Consol. Min. Co. v. Enterprise Min. Co., 53 Fed. 321. It may be that, upon a subsequent trial of the issues of fact in this case, the court below or the jury to which it may remit these issues will find them otherwise than as we assume them to be in the decision of this case. It is not intended to de-

termine such issues here.    We must consider the case on the assumption that the allegations of the pleadings of the appellant are true.    Upon this assumption the facts material to the decision of the questions presented by this record are these:

The course of the tunnel is from northwest to southeast.    The Vestal lode claim lies nearly parallel to the line of the tunnel, but its nearest corner is more than 300 feet distant from the tunnel, and is about 1,500 feet southeasterly of a line drawn across the face of the tunnel at right angles to its course. The general course of the Jumbo No. 2 vein is nearly at right angles to the line of the tunnel, and, after it crosses the Vestal claim, it extends into the Jumbo lode mining claim, which is owned by the appellant.    The relative location of the tunnel and Jumbo No. 2 vein and the Vestal and Jumbo lode mining claims appears from the accompanying plat:

In July, 1887, the line of the Group tunnel was duly located, and the work of excavation commenced. When it had been excavated 400 feet, and in April, 1888, the Vestal lode mining claim was first located. This claim is 1,500 feet long and 300 feet wide. In April, 1890, application was made by the owners of this claim for a patent, and it was entered at the land office June 30, 1890, and was patented February 6, 1892. At the time of its entry at the land office, no discovery of the Jumbo No. 2 vein had been made, and the breast of the tunnel was 750 feet distant from the nearest portion of the Vestal claim. No vein or lode which extended in such a course as to cross the end lines of the Vestal claim could cross the line of the tunnel without a radical change of its course. The Jumbo No. 2 vein does not appear at the surface of the earth, and it was first discovered in the Jumbo lode mining claim September 1, 1891, at a distance of at least 800 feet from the line of the tunnel. At the time of this discovery, the tunnel had been excavated about 1,500 feet. After this discovery, the excavation of the tunnel was pressed forward, in expectation of finding this vein in it; and on June 15, 1892, when the tunnel had been excavated 1,920 feet from its portal, this vein was discovered therein. Immediately upon the discovery of the vein, the Enterprise Company caused the boundaries of the claim, 1,500 feet long and 300 feet wide, to be marked upon the surface of the earth, and caused a certificate of location to be duly recorded, in which it claimed 54 feet along the vein to the northeasterly of the tunnel, and 1,446 feet southwesterly thereof. This claim is called Jumbo No. 2 on the plat. That portion of this vein within the limits of the Vestal claim is about 750 feet from the line of the tunnel.

Charles H. Toll and Joel F. Vaile (Henry M. Teller, Edward O. Wolcott, and Adair Wilson were with them on the brief), for appellant.

Charles J. Hughes, Jr., and C. S. Thomas (R. S. Morrison was with them on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

Three questions are presented by this case: (1) Are the owners of a valid tunnel mining claim, under section 4 of the act to promote mining of May 10, 1872 (17 Stat. 92, c. 152; Rev. St. § 2323), who have discovered a blind vein in their tunnel, and have duly located and claimed it, entitled, as against the owners of a lode mining claim located from the surface after the location of the tunnel site, but before the discovery of the vein in the tunnel, to the possession of the vein or lode thus discovered, when such vein was not known to exist prior to the location of the tunnel, but was first discovered in another lode mining claim before its discovery in the tunnel? (2) Are the owners of a tunnel mining claim estopped to maintain their right to a blind vein discovered in their tunnel after a junior lode mining claim discovered from the surface is patented, because, at a time when such blind vein had not been discovered and was not known to exist, they permitted a patent to issue for such claim, which lay more than 300 feet distant from the line of their tunnel, and nearly parallel to it, without making any adverse claim, under section 6 of the act of May 10, 1872 (now section 2325, Rev. St.)? (3) If the owners of a tunnel mining claim are entitled to the possession of any portion of such a vein, to what extent are they entitled to it?

The answers to these questions depend chiefly, if not altogether, upon section 4 of the act of May 10, 1872 (now section 2323, Rev. St.), which reads as follows:

"Where a tunnel is run for the development of a vein or lode, or for the discovery of mines, the owners of such tunnel shall have the right of possession of all veins or lodes within three thousand feet from the face of such tunnel on the line thereof, not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface; and locations on the line of such tunnel of veins or lodes not appearing on the surface, made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid; but failure to prosecute the work on the tunnel for six months shall be considered as an abandonment of the right to all undiscovered veins on the line of such tunnel."

The striking characteristic of this section of the act is that it gives the right to the possession of certain veins or lodes to the diligent owner of a tunnel before his discovery or location of any lode or vein whatever, contingent only upon his subsequent discovery of such veins in his tunnel. Veins or lodes discovered on the surface or exposed by shafts from the surface must be found before any right to them vests (Act May 10, 1872, §§ 2, 5; Rev. St. §§ 2320, 2324); but this section declares that the owners of a tunnel, by simply locating and diligently prosecuting it, without the discovery of any vein or lode whatever, "shall have the right of possession of all veins or lodes within three thousand feet from the face of such tunnel on the line thereof, not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface."

It is contended that the clause "to the same extent as if discovered from the surface" means that, upon a discovery in the tunnel, the extent of the benefit conferred is to be measured by the other provisions of the law concerning surface locations. But this section itself demolishes this contention. The right to the possession of a vein discovered from the surface would not antedate the discovery, but this section unquestionably gives such inchoate right to the owner of a tunnel before the discovery of any vein or lode. Again, a prior surface location of such a vein on the line of the tunnel after the commencement thereof would not be invalid against a discovery from the surface, but this statute declares that such locations shall be invalid as against the rights of the owner of the tunnel who subsequently discovers the vein therein. This section of the statute, then, and not the provisions of the law relative to surface locations, must be taken to be the measure of the right and title to a vein which the owner of a tunnel acquires by its discovery, and it certainly gives him a far greater and more valuable right than is granted to a prospector upon the surface. The clause "to the same extent as if discovered from the surface" is evidently used in its natural, customary sense, and it measures the extent, the distance along the lode or vein, to which the right of possession given by the statute extends, and not the general benefits conferred by the discovery. Ellet v. Campbell (Colo. Sup.) 33 Pac. 521, 526.

It is argued that the owner of a tunnel acquires no right to a vein which he finds in his tunnel when such vein has been discovered

from the surface after the location and commencement of the tunnel, and before the discovery of the vein therein, because in such a case the vein was "previously known to exist" when it was found in the tunnel, and hence was not discovered therein. But discoveries from the surface are prerequisites to locations based thereon, and yet this statute makes such locations of veins on the line of the tunnel made by other parties than its owners after its commencement void as against such owners. Thus, the statute itself declares that the subsequent discovery and location shall not deprive the owners of the tunnel of their right to the possession of the veins guarantied to them by the statute if they afterwards find them in the tunnel; much less can discovery without location have such an effect. From this provision of the statute and the context in which this clause appears, it is clear that the words "not previously known to exist" refer to the time of the location and commencement of the tunnel, and not to the respective times of the discoveries of the various veins in the tunnel. It is the right to the possession of veins not known to exist before the owners of the tunnel located and commenced to excavate it that is secured to them by this statute if they subsequently find them in their tunnel, and not the right to those only that were not known to exist when they reached them in the tunnel.

Nor can the position that the appellant here acquired no right to the vein in controversy, because its discovery in the tunnel was not upon unappropriated public land, be successfully maintained. This position rests entirely upon the claim that the place in the tunnel where the vein was discovered had been appropriated by the Hiawatha lode mining claim. That claim extended diagonally across the line of the tunnel, and had been located from the surface after the commencement of the tunnel. It was then located on the line of the tunnel, and was invalid as against the owner of the tunnel by the express terms of the section we are considering. No appropriation of the public land on the line of this tunnel that would deprive the owner of his right to discover and possess this vein could be effected by a discovery and location from the surface after the location and commencement of the tunnel, in the face of the express declaration of this section that such a surface location shall be void.

The argument in which counsel for appellees seem to have the most confidence, however, is that a general view of the acts of congress relative to mining shows that the policy of the United States is to restrict the amount of the public lands that may be reserved or acquired for mining purposes to small tracts, often not exceeding 1,500 feet in length and 600 feet or less in width, as in lode claims located from the surface (Act May 10, 1872, § 2; Rev. St. § 2320); that, if the claim of the appellant that it is entitled to 1,500 feet in length of every vein or lode it discovers in its tunnel is sustained, a tunnel owner may, by locating and lazily prosecuting a tunnel, practically reserve from development and · monopolize a tract of land 3,000 feet long and 3,000 feet wide; and that such a reservation would be against public policy, and cannot have been the in-

tention of congress in the enactment of this section. It must be borne in mind, however, that it is only the right to veins that strike the line of the tunnel, and only such of those veins as are discovered in the tunnel, that the owner gains any inchoate right to the possession of, if this claim of the appellant is sustained. Others may discover and hold all veins within 1,500 feet of the line of the tunnel that do not strike or cross its line, and all that do strike it that are not discovered in it. Nor can the owner of such a tunnel preserve his rights to undiscovered veins by lazy and perfunctory work. It is true that this section 4 provides that he shall be deemed to have abandoned his rights to undiscovered veins if he fails to prosecute the work on his tunnel for six months; but it also provides that he cannot preserve these rights against subsequent prospectors and locators unless he prosecutes the work upon his tunnel with reasonable diligence. There is a wide margin between the line of abandonment and that of reasonable diligence, and we have no doubt that the courts will so apply the rule of diligence, under this section, that the prompt and energetic prosecutor of a tunnel will receive the just rewards the act of congress guaranties to his diligence, while the slothful and negligent will not be permitted to deprive other prospectors of the rights or privileges the act secures to them.

There is no tenable middle ground under this section between a holding that the diligent owner of a tunnel is entitled to the possession of all the blind veins he discovers in his tunnel to the same extent along the veins as if he had discovered them at the surface, and a holding that by the discoveries and locations of others, subsequent to the commencement of his tunnel, and before it reaches the veins at all, he may be deprived of every portion of them, except, possibly, the small segments within the bore of the tunnel. The latter view seems to have been adopted in Tunnel, etc., Co. v. Pell, 4 Colo. 507, and perhaps in Mining Co. v. Brown, 19 Pac. 218, 7 Mont. 550; but if we were to consider here the public policy of the nation, and to attempt to derive from that a proper construction of this section of the act, we should be forced to a different conclusion. We should be constrained to hold that such a construction of this section would not only be contrary to public policy, but would defeat the evident purpose of congress in the enactment of this law. It has been the settled policy of the United States, from the passage of the first act of congress opening the mineral lands of the nation to exploration and occupation on July 26, 1866, to the present time, to encourage the discovery and development of the mineral resources of the country. The government has practically offered the mineral deposits in the public lands as a reward for their discovery and appropriation to private use. By the act of May 10, 1872, the prospector who discovers a mineral lode or vein on the surface or from the surface is given the right to 1,500 feet of the vein or lode for a mere nominal consideration. Such veins frequently appear on the surface of the earth. They are often known to exist before any labor is performed on them. The labor, expense, and risk of loss in the discovery and development of such veins from the surface are light, indeed, in comparison to those required upon a tunnel that is run to discover unknown

veins. The work of driving such a tunnel thousands of feet into the side of a mountain, for the purpose of discovering a vein or lode that is not known to exist at all, is an extremely hazardous and expensive undertaking. This is common knowledge, and congress must be taken to have had this knowledge when they enacted this law. They must have known that such a hazardous enterprise was not likely to be undertaken unless rewards commensurate with the risk and expense were offered. In view of these facts, can it be successfully maintained that, while they secured to the discoverer at or from the surface 1,500 feet of his vein, they guarantied to those who drove a tunnel thousands of feet into the rocks of a mountain nothing but the segments of the veins they found within its bore? We think not. We are of the opinion that by section 4 of this act they intended to and did guaranty to the owners of such a tunnel the possession of all the veins they discovered therein to the same extent along the veins as if they had discovered them from the surface, and that this guaranty was in full accord with the settled policy of the government to suitably reward those who discover and develop the mineral resources of the nation.

Moreover, it is not necessary to resort to public policy to find a proper construction for this section. It construes itself. A careful study of it compels the conclusion that inchoate rights to undiscovered veins were thereby guarantied to the diligent owners of tunnels contingent only upon their discovery therein. The last clause provides that failure to prosecute work upon the tunnel for six months shall be considered as an abandonment of the right to all undiscovered veins on the line of the tunnel. How could such a right be abandoned if it did not exist? The second clause provides that locations by others on the line of the tunnel after the commencement thereof shall be invalid. Why should they be declared invalid unless to secure to the owners of the tunnel their rights to the veins thus discovered and located by others, until these owners of the tunnel could reach and discover them therein? And the first clause of the section declares that:

"The owners of such tunnel shall have the right of possession of all veins or lodes within three thousand feet from the face of such tunnel on the line thereof not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface."

The guaranty of that clause is plain and certain, and our conclusion is that from the time of the location of a tunnel under section 4 of the act of May 10, 1872, its owner has the inchoate right to the possession of every vein or lode within 3,000 feet from the face of such tunnel on the line thereof that was not known to exist when the tunnel was located and its excavation was commenced, contingent only upon the diligent prosecution of the work on the tunnel and the subsequent discovery of the vein or lode therein. Upon the discovery of such a vein in the tunnel while the work is being prosecuted with reasonable diligence, such owner is entitled to the possession of such lode or vein to the same extent along the lode or vein as if discovered from the surface. No discovery or location of such veins or lodes subsequent to the location and com-

mencement of the tunnel can deprive the owner of the tunnel who diligently prosecutes his work therein of these rights. Back v. Mining Co. (Idaho) 17 Pac. 83, 85; Mining Co. v. Brown (Mont.) 28 Pac. 732, 734.

Was the inchoate right of the owners of this tunnel to the possession of the then undiscovered Jumbo No. 2 vein lost by their failure to make a claim adverse to that of the owners of the Vestal lode mining claim when the latter applied for their patent, in 1890? Sections 6 and 7 of the act of May 10, 1872 (now sections 2325, 2326, Rev. St.), provide, in effect, that any one who has located a claim under that act may file an application for a patent to his claim, together with a plat and certain field notes, notices, and affidavits; that for 60 days the register of the land office shall publish and post a notice that such application has been made; and that, if no adverse claim has been filed at the expiration of said 60 days, it shall be assumed that the applicant is entitled to a patent, and that no adverse claim exists. If an adverse claim is properly filed, proceedings in the land office are stayed until the trial and decision by a court of competent jurisdiction of the question, who is entitled to the right of possession of the claim? and the patent issues to the claimant who is adjudged to have that right. There is no doubt that the object of these provisions of the act of congress is to require the conflicting claims of all parties to be adjusted before the patent issues, so far as that can justly be done at the time the application for the patent is made. The proceedings are judicial in their character, and bring all parties who have known existing adverse claims into court. If such parties stand by, and, in the absence of fraud or mistake, permit the statutory time for filing adverse claims to run without presenting their claims, their rights, so far as they might then have been determined in such proceedings, are forever lost. Eureka Consol. Min. Co. v. Richmond Min. Co., Fed. Cas. No. 4,548, 4 Sawy. 302; Kannaugh v. Mining Co., 16 Colo. 341, 27 Pac. 245. Thus, in Back v. Mining Co., 17 Pac. 83, the supreme court of Idaho held that the owner of a tunnel mining claim had the right to make an adverse claim against one who applied for a patent to a lode mining claim which was located across the line of the tunnel, and was based on a discovery made in a shaft sunk directly over the line of the tunnel. In Ellet v. Campbell, 18 Colo. 510, 33 Pac. 521, after the owners of a tunnel had discovered a blind vein therein, and had located and claimed it, others discovered the same vein from the surface at a distance of some 200 feet from the line of the tunnel, located their claim on it, and applied for a patent for it, and the owners of the tunnel were permitted to file their adverse claim and to litigate the right of possession. In Mining Co. v. Brown (Mont.) 28 Pac. 732, after the location and commencement of a tunnel, one discovered a blind lode from the surface, located a mining claim upon it which intersected and crossed the line of the tunnel, and then applied for a patent. The owner of the tunnel, who had not yet driven his tunnel through the ground covered by this junior claim, made an adverse claim under this act; and upon his complaint the supreme court of Montana enjoined the applicant from

prosecuting his proceedings for a patent until the owner of the tunnel could, in the use of reasonable diligence, drive his tunnel a sufficient distance to demonstrate whether or not the lode claim would be discovered therein. Cases of this character fall within the letter and the spirit of the provisions of this act of congress. In each of these cases the blind vein was known to exist when the application for a patent was made; in each of them the vein had been discovered and located; and in each of them the claimant who had discovered it from the surface admitted that it crossed the line of the tunnel. As the vein, its strike, and the grounds of their adverse claims to it were known to each of the respective parties in each of these cases, there was no reason why their claims should not be adjudicated before the patent issued.

But can these provisions for the presentation and adjudication of adverse claims have any just application to such an unknown, contingent claim as that which the owners of this tunnel had against the owners of the Vestal claim when the latter applied for their patent? The Vestal claim was not based on the discovery of the then unknown Jumbo No. 2 vein. It did not cross the line of the tunnel. It lay so nearly parallel to it that no vein that crossed the ends of that claim could strike the tunnel without a radical change of its course, and the presumption was that the strike of the vein that these claimants had discovered was lengthwise, and not crosswise, of the claim they had located. The line of the tunnel was staked off on the surface of the earth, and the legal record of their claim to it had been made by its owners long before the owners of the Vestal made their discovery and location. The act of congress declared that the owners of this tunnel should have the right to all the unknown veins they should discover in their tunnel. These facts and these provisions of the law the owners of the Vestal claim knew, and they gave no notice of any claim to any vein guarantied to the owners of the tunnel by this law. Why, then, should the latter be estopped to claim the veins that cross the Vestal location which they have since discovered because they did not adverse the claim of the owners of the Vestal, presumptively based on a parallel vein? On the other hand, when the application for the patent of the Vestal claim was made, and when the claim was entered for patent at the land office, the breast of the tunnel was many hundred feet distant from the point where the Jumbo No. 2 vein was finally discovered in the tunnel. If the owners of the tunnel had then made their adverse claim to an undiscovered vein that might at some future time be discovered in the tunnel, and that might pass through the Vestal location, how could they have proved their "right to the possession" of any portion of the Vestal claim under section 7 of the act of May 10, 1872 (now section 2326, Rev. St.)? They did not know, and no one knew, that any such vein passed through the Vestal location, or that any such vein would ever be discovered in the tunnel, or even that any such vein existed. The law does not require an impossibility of any man. It does not require him to know the unknown, or to demonstrate that which is incapable of proof; and we are of the opinion that the owners of this tunnel

v.66 F.no. 3—14

ought not to be and were not estopped from enforcing the rights guarantied to them by the act of congress, because they did not make and maintain their claim to those rights at a time when it was impossible for them to establish them, and when no one knew that they existed. In our opinion, sections 6 and 7 of the act of May 10, 1872, have no application to cases of this character, in which the existence of the adverse claim is unknown and incapable of fair adjudication until after the land is entered for patent; and we think the owners of the Vestal claim took their patent subject to the right of the owners of the tunnel to the possession of any unknown veins in that claim subsequently discovered in the tunnel, just as they took it subject to the right of the owner of an adjoining mining claim, who never made any adverse claim to their location, to follow on its dip through their patented territory any vein which has its apex in his claim, and just as they took it subject to the right of a junior locator of a cross vein, who has made no adverse claim, to remove from the territory covered by their patent the ore in that vein not within the space of intersection. Mining Co. v. Campbell, 135 U. S. 286, 301, 10 Sup. Ct. 765; Hall v. Mining Co., Morr. Min. R. (3d Ed.) p. 282; Branagan v. Dulaney, 8 Colo. 408, 412, 8 Pac. 669; Lee v. Stahl, 9 Colo. 208, 210, 11 Pac. 77; Morgenson v. Milling Co., 11 Colo. 176, 179, 17 Pac. 513.

The next question for consideration is, to what extent are the owners of a tunnel entitled to a blind vein discovered therein? The appellant claims the possession of the vein in dispute for a distance of 1,500 feet, and has duly located and claimed this 1,500 feet so that 54 feet of its claim lie northeasterly of the line of the tunnel, and 1,446 feet southwesterly of it. In 1861, before congress had enacted any law establishing and defining the rights of those who discovered mineral deposits on the public lands, the legislature of Colorado passed an act which provided that any person or persons engaged in working a tunnel under the provisions of that act should be entitled to 250 feet each way from said tunnel on each lode discovered (Sess. Laws Colo. 1861, p. 166; Mills' Ann. St. § 3141); and the court below held that this statute limited the extent of the right of the Enterprise Company to the possession of this vein, and upon that ground entered the decree against the appellant. But the second section of the act of May 10, 1872, provides that a mining claim located after that date "may equal, but shall not exceed, one thousand five hundred feet in length along the vein or lode." In 1874 the legislature of Colorado passed "An act concerning mines." Section 1 of that act reads: "The length of any lode claim hereafter located may equal but not exceed fifteen hundred (1,500) feet along the vein." Section 7 provides that any open cut, cross cut, or tunnel which shall cut a lode at the depth of 10 feet below the surface shall hold such lode as if a discovery shaft were sunk thereon. And section 18 reads: "All acts or parts of acts in conflict with this act are hereby repealed." Sess. Laws Colo. 1874, pp. 185, 187, 190; Mills' Ann. St. §§ 3148, 3154. If the act of 1861 limited the length of a lode claim to 250 feet on each side of the tunnel, it was clearly repealed by this act of 1874; and the

appellant was entitled under the laws of Colorado, as well as under the act of congress, to the possession of the vein in question to the extent of 1,500 feet in length.  Ellet v. Campbell (Colo. Sup.) 33 Pac. 523, 528.

It is urged that, if the owner of the tunnel is entitled to the possession of the mineral to the extent of 1,500 feet along the vein or lode, he is nevertheless restricted to 750 feet on one side and the like amount on the other side of his tunnel.  This contention finds no support in the laws.  Section 4 of the act of May 10, 1872, as we have held, entitles him to the possession of the vein to the same extent along the vein or lode as if he had discovered it from the surface.  If he had discovered it from the surface, he could have located his claim upon and could have held (if he had the superior title, as the appellant has here) any 1,500 feet along the vein that included his discovery shaft.  It follows that the appellant had the right to any 1,500 feet of this vein that included its point of discovery in the tunnel, and that its location and claim of possession of 54 feet of the vein northeasterly and 1,446 feet southwesterly of this point of discovery must be sustained.

Finally, counsel for appellees insist that the appellant is estopped to claim any of the ore within the boundaries of the Vestal claim because on March 3, 1890, some of the appellees agreed with the then owners of the Hiawatha lode mining claim that neither they nor their heirs or assigns would ever make any claim to any ore within the Hiawatha location.  But there was no covenant in this agreement by any of the parties to it that they would not claim the ore within the Vestal location, and this contract is utterly immaterial to the present issue.  They also claim that a like estoppel arises from a certain contract dated July 23, 1890, between certain parties who claim to be the owners of certain lode mining claims, including, among others, the Vestal claim; but none of the parties to this second contract ever had any interest in the Group tunnel or in the Jumbo No. 2 claim upon which the rights of the appellant rest, nor were either of these claims mentioned in the contract.  Counsel say in their brief that the Swickhimers, who were parties to this contract, were the principal grantors of the appellant, and that the contract runs with the land, and in that way estops the appellant; but they have failed to call our attention to any evidence that these Swickhimers were the grantors of the appellant, and, after a patient search through this voluminous record, we are unable to find any such evidence.  From this record these contracts do not appear to affect the rights of the appellant in any way, and they do not seem to have been considered in the court below.

The result is that this case must be reversed, and remanded to the court below, for further proceedings not inconsistent with the views expressed in this opinion; and it is so ordered.