ERWIN v. PEREGO et al.

(Circuit Court of Appeals, Eighth Circuit. March 6, 1899.)

No. 1,107.

1. MINES AND MINERALS—CONFLICTING CLAIMS—VENUE.

Under Const. Utah, art. 8, § 5, requiring all actions to be tried in the county where they arose, an action to try title to a mining claim, located on land included in another claim on which defendant entered, arose in the county where the land was situated and the entry made, and not in that where the land office in which the defendant's claim was filed was situated.

2. ACTIONS TO TRY TITLE—COMPLAINT.

An averment, in an action to try title, that plaintiff was the owner of the land from a date prior to the commencement of the action, is sufficient to warrant proof of his ownership at any time within that period.

3. MINES AND MINERALS—CLAIMS—LOCATION.

Rev. St. §§ 2319, 2320, 2324, require that, before the locator of a mining claim on public lands shall be entitled to same, he shall have discovered on unappropriated land a mineral-bearing lode, and shall have distinctly marked the boundaries of his claim, so that they may be readily traced. *Held*, that the finding of the lode need not precede the staking of the claim, and hence, where a claim was located, and the locator thereafter discovered a lode thereon before the claim had been appropriated by another, he had a valid claim thereto.

**4. SAME.**

That part of land on which a minor located a claim was patented to another without his objection did not prevent him from including the part unappropriated in another claim located on adjoining land, and obtaining a valid title to the claim so established.

Appeal from the Circuit Court of the United States for the District of Utah.

Edward S. Ferry, Arthur Brown, and Henry P. Henderson, for appellant.

George Westervelt and J. T. Richards, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. Sections 6 and 7 of the act of congress of May 10, 1872, now sections 2325 and 2326 of the Revised Statutes, provide that any one who has located a mining claim under that act may file an application for a patent to it, together with a plat and certain field notes, notices, and affidavits; that for 60 days the register of the land office with whom this application is filed shall publish and post a notice that it has been made; that, if no adverse claim is filed at the expiration of the 60 days, it shall be assumed that the applicant is entitled to his patent and that no adverse claim exists; that, if an adverse claim is properly filed, proceedings in the land office shall be stayed until the trial and decision by a court of competent jurisdiction of the question who is entitled to the right of possession of the claim; and that the patent shall issue to the party who is adjudged by the court to have that right. There was a conflict between the lode mining claim Kate F., which was owned by the appellant, David D. Erwin, and the lode mining claim Star, which was owned by the appellees, William Perego and Michael F. Clark. Erwin applied for a patent to the Kate F. under the act of congress. Perego and Clark, as owners of the Star, which included the entire area covered by the Kate F., filed an adverse claim, and then brought this action in the district court in the county of Summit, in the state of Utah. to determine who was entitled to the possession of the area in conflict between the two claims. The case was removed to the United States circuit court, and that court heard it, and rendered a decree in favor of the appellees. 85 Fed. 904. The appellant asks a reversal of this decree on three grounds: (1) Because the court below had no jurisdiction of the suit; (2) because the appellees' petition was insufficient to sustain the decree; and (3) because Perego, who located the Star claim, did not make his discovery until after he had marked the boundaries of his claim. These objections to the decree will be considered in their order.

1. The constitution of the state of Utah provides that "all criminal and civil business arising in any county must be tried in such county unless a change of venue be taken in such cases as may be provided by law." Const. Utah, art. 8, § 5. The supreme court of that state has held that, under this clause of its constitution, the courts of that state have no jurisdiction to try any action brought in any other county than that in which the cause of action arose. Konold v. Railway Co., 51 Pac. 256. The register of the land office before whom

the application for the patent to the Kate F. was filed in this case held his office in Salt Lake county, in the state of Utah, while the land in controversy is situated in Summit county, in that state. The appellant insists that the court below had no jurisdiction of this suit, because the cause of action upon which it is founded arose in Salt Lake county, where the application for the patent was filed, while the action was brought in Summit county, where the land was situated. But the filing of the application for the patent did not create the cause of action. Its only effect was to limit the time within which, under the act of congress, the action could be advantageously brought. The subject of the action was the right to the possession of the land. The cause of action arose—it was created—when, in 1895, the appellant entered upon the appellees' claim, disturbed their possession, made a discovery of ore, and located the Kate F. upon it. From that time forward the appellees' cause of action existed, and the acts which had given rise to it were done in Summit county and upon the land in controversy. Actions of ejectment, trespass, forcible entry and unlawful detainer, and, indeed, all actions in which the real issue is which party is, or was at a certain time, entitled to the possession of the land, are local in their nature, and necessarily arise where the land is situated. This action was properly brought in Summit county, where the real estate, the right to the possession of which was in controversy, was located. Mosby v. Gisborn (Utah) 54 Pac. 121, 126.

2. Another objection to the decree is that the petition of the appellees was insufficient to sustain it, because it alleges that Perego was the owner, or Perego and Clark were the owners, of the Star claim from and after September 5, 1888, while the proof was that their title to it did not vest in Perego, who subsequently conveyed an interest to Clark, until some time in the autumn of 1890. This objection was not made to the evidence in the court below, and it is too trivial and frivolous to merit consideration. An averment that one was the owner of land from an earlier date to the time of the commencement of the action is certainly ample to warrant proof of his ownership at any time within that period.

3. It is contended that the decree which sustains the location of the Star mining claim made by Perego in 1889 is erroneous because he made no discovery of a mineral-bearing lode within his claim until a year after he had located and marked its boundaries. It is insisted that there can be no valid location of a mining claim unless the locator discovers the lode or ledge within the limits of his claim before he marks its boundaries. Perego marked the boundaries of the Star claim, which is sustained by this decree, in 1889; but he made his discovery of a mineral-bearing lode within it in the fall of 1890. It was not, however, until October, 1895, that the appellant made the discovery and marked the boundaries of the Kate F., upon which he relies to maintain his claim to a portion of the land covered by the Star. It is not claimed that either of these locators failed to comply with any of the requirements of the acts of congress, or of the statutes of the state of Utah, or of any of the rules and customs of miners, unless the fact that Perego did not make his discovery until after he located his claim constituted such a failure; and the entire case turns

upon that question. If the location which Perego made in 1889 became valid at any time before October 5, 1895, when the appellant made his discovery, that discovery was not made upon unappropriated public land, and was void; and if Perego's location was void in 1895, the land was unappropriated, and Erwin's location was valid. The acts of congress prescribe two, and only two, prerequisites to the vesting in a competent locator of the complete possessory title to a lode-mining claim. They are the discovery upon unappropriated public land of the United States within the limits of his claim of a mineral-bearing lode, and the distinct marking of the boundaries of his claim, so. that they can be readily traced. No appropriation of the land is made until both these requirements are fulfilled, and until that time the lode and land sought are open to location and appropriation by any competent locator; but when these requirements have been complied with the land is no longer public, but the possession, the right to the possession, and the right to acquire the title are irrevocably vested in the locator. Rev. St. §§ 2319, 2320, 2324; 1 Lindl. Mines, §§ 273, 328, 350; Book v. Mining Co., 58 Fed. 108; Jupiter Min. Co. v. Bodie Consol. Min. Co., 11 Fed. 666, 680; Zollars v. Evans, 5 Fed. 172, 175; McGinnis v. Egbert (Colo. Sup.) 5 Pac. 652, 655. Now, Perego had complied with both these requirements five years before the appellant had made his discovery and location on the property in dispute. How can the order in which he fulfilled them be material to Erwin? He marked the boundaries of his claim in 1889, and he made his discovery in 1890. If he had again marked these boundaries on the day he made his discovery, or on the day following, it is not claimed that his location would have been unlawful or invalid. But those boundaries were already marked. Why should he be required to do the useless act of designating them again? Such an act would not enable them to be more readily traced, and no better notice of his claim, or of its nature or extent, would have been given by pulling down and again establishing the monuments which already designated its limits. It cannot have been necessary to pursue this course, since the law never requires the performance of an idle and futile ceremony. Moreover, there is no requirement in the legislation of congress that the discovery shall be made before the location, or that the location shall precede the discovery. The Revised Statutes simply provide that both acts shall be completed before the right of possession vests. There is no reason to be deduced from the acts of congress or from the nature of the case why a claim upon which the location was made before the discovery should be held void, while one upon which the discovery was made before the location should be held valid; and the rights of these locators should be left where the congress established them, valid and vested when both acts have been done, regardless of their order, but void and ineffectual when the rights of others have intervened before either act has been completed. The order in which the statutory requirements for securing a lode mining claim are complied with is immaterial, so long as the rights of others do not intervene before they are complied with. The marking of the boundaries of the claim may precede the discovery, or the discovery may precede the marking; and if both

are completed before the rights of others intervene, the earlier act will inure to the benefit of the locator as of the date of the later, and a complete possessory title to the premises will vest in him as of the later date. Jupiter Min. Co. v. Bodie Consol. Min. Co., 11 Fed. 666, 676; 4 Morr. Min. R. 411, 423; North Noonday Min. Co. v. Orient Min. Co., 1 Fed. 522, 531; Zollars v. Evans, 5 Fed. 172, 175; Strepy v. Stark (Colo. Sup.) 5 Pac. 111, 114; Thompson v. Spray, 72 Cal. 528, 533, 14 Pac. 182; Erhardt v. Boaro, 113 U. S. 527, 536, 5 Sup. Ct. 560. This conclusion is decisive of the case. The location of 1889 inured to the benefit of Perego as of the date of his subsequent discovery in 1890, and vested in him and his grantee the right to the possession of the property in dispute from the latter date.

It is urged in the brief of counsel for appellant that the acts of Perego in 1890 did not amount to a discovery, but were the mere development of a vein upon which he had made a void discovery on September 5, 1888. An examination of the record, however, has convinced us that there is no merit in this suggestion. Perego did make a discovery of the lode in question on September 5, 1888, but he made this discovery within the limits of a prior location known as the "Gopher Claim," and a part of the Star claim was then located on the Gopher claim. In the summer of 1889 the owners of the Gopher applied for a patent to their claim under the act of congress, and Perego made no claim adverse to that application. He thereby lost all that portion of the original Star claim which was within the limits of the Gopher. Enterprise Min. Co. v. Rico-Aspen Consol. Min. Co., 66 Fed. 200, 208, 13 C. C. A. 390, 398, 32 U. S. App. 75, 87; Eureka Consol. Min. Co. v. Richmond Min. Co., Fed. Cas. No. 4,548, 4 Sawy. 302; Kannaugh v. Mining Co., 16 Colo. 341, 27 Pac. 245. As his discovery of September 5, 1888, was on the Gopher claim, it was not on the unappropriated public land of the United States; and hence his entire claim based upon that discovery was void. Rev. St. § 2319; Belk v. Meagher, 104 U. S. 279, 284; Gwillim v. Donnellan, 115 U. S. 45, 51, 5 Sup. Ct. 1110. The result was that all that portion of the Star claim within the limits of the Gopher claim went to the owners of the Gopher, and all that portion without the boundaries of the Gopher became unappropriated public land, and subject to relocation. Thereupon, in 1889, Perego caused the Star claim to be surveyed again, marked its boundaries, and located it on that portion of his first claim that was not within the boundaries of the Gopher. In 1890 he made a new discovery of the lode, and sunk a new shaft, within the limits of his claim and without the limits of the Gopher. When it was determined, in 1889, that his location of 1888 was void, Perego undoubtedly had the same right to discover a lode and locate a claim upon that portion of his former claim which remained unappropriated that any other competent locator had. His failure to secure a valid claim by his location of 1888 did not deprive him of the right to try again. It is not necessary that a locator shall make the first discovery of a vein or lode within his claim. All that the statutes require is that he shall discover the lode within his claim. The evidence in this record is clear and uncontradicted, not that Perego was developing in 1890 the lode which he had discovered in

1888 and had subsequently abandoned, but that he then made a new discovery of that lode within the limits of his relocated claim, and that he thereby perfected his possessory title to the premises in dispute. The decree below is affirmed.