UINTA TUNNEL, MIN. & TRANSP. CO. v. AJAX GOLD MIN. CO.

(Circuit Court of Appeals, Eighth Circuit. October 25, 1905.)

No. 1,811.

1. MINES AND MINERALS—ENTRIES AND PATENTS—LODE CLAIMS—ESTOPPEL OF OWNER OF PRIOR TUNNEL CLAIM.

Entries and patents of lode mining claims, in proceedings to which a claimant of a tunnel site located across them prior to the entries was not, and was not required to be, a party, will not estop him from establishing by the testimony of witnesses who know and by other customary evidence the fact that no discoveries of mineral in rock in place had been made in the lode claims before the claim for the tunnel site was located across them.

2. SAME—WORD "LOCATION" HAS TWO MEANINGS.

The word "location," in its application to mining claims, has two distinct meanings: First, all the acts, including discovery, requisite to perfect the right of possession; and, second, the placing of the claims, the posting of the notice, and the marking of the boundaries, excluding discovery.

3. CONTRACTS—CONSTRUCTION—ASCERTAINING INTENTION.

One of the fundamental rules for the interpretation of a contract is that the court should place itself as near as may be in the situation of

the contracting parties at the time the agreement was made, and should then endeavor to ascertain from the contract, in the light of the surrounding facts and circumstances, what the parties actually intended by their agreement.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 730.]

**4. SAME—INTENTION TO BE DEDUCED FROM ENTIRE AGREEMENT.**

This intention must be deduced, not from specific provisions or fragmentary parts of the instrument, but from the entire context, because the intention is not evidenced by any part or provision of it, or by the agreement without any part or provision, but by every part so construed as to be consistent with every other part and with the entire contract.

Every provision of the instrument should be given its ordinary meaning and effect, if possible, and no part should perish by construction.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 734.]

**5. SAME—INTERPRETATION OF PARTIES—TEST OF INTENTION.**

The practical interpretation of the contract by the parties, while they are engaged in its performance and before any controversy concerning it has arisen, is one of the most satisfactory tests of its meaning, and courts may generally adopt that construction with safety.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 753.]

**6. SAME—INTENTION WHEN ASCERTAINED MUST PREVAIL.**

When the actual intention of the parties is ascertained, it must prevail, regardless of the dry words, inapt expressions, or careless recitations in the instrument.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 730.]

**7. MINES AND MINERALS—LOCATION—DISCOVERY—STATEMENT OF FACTS.**

An agreed statement of facts, which stipulated that the lode claims of the plaintiff were "located in compliance with law" at dates anterior to the location of the defendant's tunnel site, and that as to the issue made in the pleadings upon the question whether mineral in rock in place was discovered in the plaintiff's claims before the location of the tunnel site the defendant offered testimony tending to negative such discovery, which is on plaintiff's objection ruled out by the court, and such ruling is excepted to by the defendant, used the word "location" in its more restricted sense, excluding discovery, and did not estop the defendant from litigating the issue relative to the discovery of mineral in rock in place in the plaintiff's claims prior to the location of the defendant's tunnel site.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

Charles J. Hughes, Jr. (Scott Ashton, on the brief), for plaintiff in error.

Wm. W. Field and J. C. Helm (J. F. Vaile, on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS and CARLAND, District Judges.

SANBORN, Circuit Judge. In the year 1901 two actions were pending in the court below against the Uinta Tunnel, Mining & Transportation Company, one by the Creede & Cripple Creek Mining & Milling Company, and the other by the Ajax Gold Mining Company. The former action involved the right to the possession of the space within the bore of the tunnel of the defendant where it passed through two lode mining claims owned by the Creede Company,

which were entered for patent on August 5, 1892, and were patented on December 21, 1892. The Creede Company alleged that the discovery and location of these claims were made on January 2, 1892. The defendant located its tunnel site on January 13, 1892, and it denied that any discovery of mineral in rock in place had been made ·in the lode claims of the plaintiff prior to its location of its tunnel site. The action of the Ajax Company, which is now before us for consideration, involved the right to the possession of the space within the bore of the tunnel where it passes through the Mammoth lode mining claim and the Apex lode mining claim, which were the property of the Ajax Company, were entered for patent respectively on May 9, 1893, and March 31, 1893, and were patented on September 6, 1895, and April 22, 1895. The Ajax Company alleged that a discovery and location of the Mammoth mining claim was made on September 25, 1891, and of the Apex mining claim on December 29, 1891. The defendant denied that any discovery of mineral in rock in place had ever been made in either of these claims before the location of its tunnel site on January 13, 1892.

In each of these cases counsel for the respective plaintiffs insisted that the patents to the lode claims conclusively estopped the defendant from proving by parol testimony, or otherwise, that no discovery of mineral had been made upon them before the location of the tunnel site, and one of the most important questions in the cases was this: When the claim to a tunnel site has been located before the entry of the conflicting lode mining claims which have subsequently passed to patents, is the question whether discoveries of mineral were made within the lode claims before the location of the claim to the tunnel site open to determination by means of testimony dehors the patents? The court below answered this question in the negative. This court and the Supreme Court answered it in the affirmative. 119 Fed. 164, 57 C. C. A. 200; 196 U. S. 337, 25 Sup. Ct. 266, 49 L. Ed. 501. The question was presented to the court below in this way: A motion was made in each case to strike out portions of the answer which denied the discoveries in the lode claims before the location of the tunnel claim. The motions in the two cases appear to have been considered together, for the orders of the court which granted them were both made on December 6, 1901. There remained, however, in the Ajax Company's case, after the motion was granted, an averment by the defendant that there had been no discovery in the lode claims of the plaintiff before the location of the tunnel site.

In this state of the cases the action of the Creede Company was tried in January, 1902, and the court rejected evidence offered by the defendant to prove that no discovery had been made in the lode claims before the location of the tunnel site, there was a judgment for the Creede Company, and the defendant sued out a writ of error from this court to reverse it. While that action was pending here and in June, 1902, the case of the Ajax Company was tried in the Circuit Court. That court made the same ruling upon the trial which it made in the Creede Case. A judgment was rendered against the defendant, a writ of error to reverse it was sued out of this court

on June 27, 1902, and the parties to this action stipulated in writing that this case should be continued until the Supreme Court decided the case of the Creede Company. That case has been determined and the judgment of the Circuit Court has been reversed, because that court refused to permit the defendant to prove that there were no discoveries in the lode claims before the location of the tunnel site.

A like ruling of the Circuit Court in the Ajax Company's case is assigned as error here, and the facts which have been recited seem to render it fatal to the judgment below. Counsel for the Ajax Company, however, contend that the defendant is estopped from reviewing this ruling, and from litigating the question it determines, by a written stipulation of agreed facts, which was made and introduced in evidence at the trial in the Circuit Court. This stipulation consists of 17 numbered paragraphs. The clause which counsel for the Ajax Company insists creates this estoppel is found at the commencement of the fourth paragraph and is in these words:

"That said Mammoth Pearl * * * and Apex lode mining claims were located in compliance with law, on, to wit, the 22d day of January, 1891, * * * and the 2d day of October, 1891, respectively."

And the argument is that a location in compliance with law necessarily includes a discovery of mineral in rock in place in the claim, and that this concession is therefore in reality a stipulation that discoveries had been made in these claims at the dates of their respective locations, which were prior to the location of the tunnel site. There is no doubt that a location of a lode mining claim. in compliance with law, which has been so perfected as to vest a complete right of possession in the locator, cannot be made without a discovery of mineral in the claim; and the reasoning of counsel here might be conclusive if the clause quoted constituted the entire agreement of the parties upon the subject. The agreed statement of facts, however, contains the further stipulation that the tunnel was located on the 13th day of January, 1892, and the sixteenth paragraph reads:

"That as to the issue made in said pleadings upon the question whether mineral in place was discovered on plaintiff's * * * . Mammoth Pearl and Apex lode claims, or in the discovery shafts thereof, prior to the date of the location of the said Uinta tunnel site, defendant offers testimony tending to negative such a discovery, which testimony is, on plaintiff''s objection, ruled out by the court; such ruling being duly excepted to by the defendant."

The purpose of a written contract is to express the concurring intention of the minds of the parties when it is made. Hence the object of its construction or interpretation is to ascertain the actual intent and meaning of the parties when they executed it. Familiar and serviceable rules of interpretation of agreements are that the court may place itself as near as may be in the situation of the parties to the agreement at the time it was made, and may then endeavor to ascertain from the terms of the contract, in the light of the surrounding facts and circumstances, the actual intent and meaning of the parties; that this intention must be deduced, not from specific provisions or fragmentary parts of the instrument, but from its entire context, because the intention is not evidenced by any part or

provision of it, or by the instrument without any part or provision, but by every part and term so construed as to be consonant with every other and with the entire agreement; that every provision of the instrument should be given its ordinary meaning and effect, if possible, and no part should perish by construction; and that the actual intention of the parties, when ascertained, must prevail, regardless of dry words, inapt expressions, or careless recitations in the contract.

Now, while it is true that a location of a lode mining claim, adequate to perfect the possessory right of the locator, includes within its legal and primary meaning a discovery of mineral in the claim, because no such location is possible without a discovery, it is also true that this word "location" is frequently used in this connection in another and more restricted sense to portray the placing of the claim, the posting of the notice containing the name of the lode, the name of the locator, and the alleged date of the discovery, and the marking of the boundaries of the claim, without the discovery. It is used in this sense in Morrison's Mining Rights (11th Ed.) at page 32, in Snyder on Mines, at section 354, in the case of In re James Mitchell, 2 L. and Dec. Dep. Int. 752, in Reins v. Raunheim, 28 L. and Dec. Dep. Int. 526, 529, and in Erwin v. Perego, 35 C. C. A. 482, 485, 93 Fed. 608, 611, where the claim was made that a title to a lode mining claim was invalid because the discovery followed, instead of preceded, the posting of the notice and the marking of the boundaries; and this court said:

"There is no reason to be deduced from the acts of Congress, or from the nature of the case, why a claim upon which the location was made before the discovery should be held void, while one upon which the discovery was made before the location should be held valid."

A location in this latter sense of a lode mining claim in compliance with law, in the terms of the agreed statement of facts, was permissable without any discovery, if a discovery was subsequently made before another located the claim. Creede, etc., Milling Co. v. Uinta., etc., Transportation Co., 196 U. S. 337, 350, 25 Sup. Ct. 266, 49 L. Ed. 501; Erwin v. Perego, 35 C. C. A. 482, 93 Fed. 608. If, therefore, the parties to the agreed statement of facts used this word "location," where they wrote concerning the location of the lode mining claims, in this restricted sense, to indicate the posting of the notices and the marking of the boundaries, without the discovery, the defendant was not estopped by his stipulation from proving that there had been no discovery in the lode claims before the tunnel site was located. In which sense did they use it?

One of the main issues, perhaps the most important question, raised by the pleadings was whether or not any discoveries in the lode claims had been made before the location of the tunnel site. The defendant had tendered this issue in the Creede Company's Case, had been defeated upon it by the ruling of the court that the patents of the lode claims estopped it from litigating this issue, had sued out a writ of error to reverse that ruling, and the question of law thus raised was awaiting decision in this court. In this state of the facts

the Ajax Company's case was tried. An agreement should receive a natural and reasonable construction, one in accord with the course of action commonly pursued by men of ordinary judgment and prudence under like circumstances, rather than one that is unreasonable and contrary to the usual course of action of sensible men in like cases, and it is not reasonable to suppose that the parties to this action who insisted upon its trial, intended to make an agreement to extract from the case one of its main issues which they were so vigorously contesting in both the circuit court and this court. The sixteenth paragraph of the agreed statement amounts to a demonstration of the fact not only that they had no such purpose, but that they intended to, and did retain this issue in the case, try it, take the ruling of the court upon the question of law it presents, and preserve it for determination by the higher courts. That paragraph expressly provides that the defendant offers testimony tending to negative a discovery in the lode mining claims prior to the location of the claim for the tunnel site, that this testimony is on plaintiff's objection ruled out by the court, and that this ruling is excepted to by the defendant. The interpretation of the contract for which counsel for the plaintiff contend would render this paragraph nugatory and would fly in the teeth of the rule that meaning and effect should be given to every part of a contract, if possible. On the other hand, if the word "location" is given its more restricted, but permissible, definition of posting the notices and marking the boundaries of the claims, all the parts of the stipulation have their normal meaning and effect, and it becomes a consistent and rational whole. This was the construction which the parties to the agreement gave to it before this controversy arose; and where the execution of a contract involves a practical construction of it, and the minds of the parties agree upon it while they are engaged in its performance and before any controversy has arisen concerning its interpretation, that construction is one of the best indications of their true intent. City of Chicago v. Sheldon, 9 Wall. 50, 54, 19 L. Ed. 594; Long Bell Lumber Co. v. Stump, 30 C. C. A. 260, 264, 86 Fed. 574, 578; Fitzgerald v. First National Bank, 52 C. C. A. 276, 280, 114 Fed. 474, 478.

After the agreed statement of facts had been received in evidence, the defendant produced witnesses and inquired of them whether there was any discovery of mineral in the discovery shafts of the Mammoth and Apex claims "prior to January 2, 1892, which was after the location of the Uinta tunnel." The plaintiff objected to this testimony, not, as it now objects, because it claimed that the defendant had agreed that discoveries had been made at the stipulated dates of the locations, but because it appeared from the stipulation that the lode claims were patented, that their locations were prior to the time fixed in the question and prior to the location of the tunnel, and because the patents related back to the dates of the locations of the claims and "the presumption of the discovery of mineral at that time was conclusive." The offer of the testimony and the objections are alike inconsistent with the theory that the parties had agreed that discoveries had been made in the lode claims and that the locator's right of

possession of them had been perfected before the tunnel site was located. The stipulation in this court to continue this case until the Supreme Court decided the case of the Creede Company betrays a similar inconsistency. The plain truth is that the contention of counsel for the plaintiff here is an afterthought, inspired by commendable zeal and anxiety to escape from the effect of the decision in the case of the Creede Company. The sixteenth paragraph of the agreed statement of facts, which, under the plaintiff's interpretation would be avoided, and which expressly reserves for review the ruling of the court below which was reserved in the Creede Case, the entire agreement, when all its provisions are read and construed together and the practical interpretation of the parties before this controversy arose, all converge to show that the meaning of the word "location" in the stipulation was the placing of the claims, the marking of their boundaries, and the posting of the notices, and not the perfecting of the right of possession, and that the true intent and meaning of the parties was to retain in the case the issue of the discovery and to preserve for review in this court the legal question which conditioned the right of the parties, in this case and in the case of the Creede Company alike, until that question was finally decided in the latter case by the Supreme Court. This intention is so clearly evidenced by the agreement that it must prevail.

It is said that the question addressed to the witnesses of the defendant relative to the discoveries in the lode claims was irrelevant, because it confined their testimony to a time prior to January 3, 1892, while the tunnel site was not located until January 13, 1892. But that objection was not made in the court below. It might have been removed, if it had been suggested. The defendant's testimony was not excluded upon that ground, and the legal question in this case is adequately preserved and presented to this court by the sixteenth paragraph of the agreed statement of facts, approved and embodied in the bill of exceptions by the judge who tried the case, as it was, regardless of the subsequent offers of and rulings upon the testimony. The defendant is not estopped by the stipulation of the agreed facts from challenging the ruling of the court below which excluded its testimony to the effect that no discovery had been made in the lode claims before the tunnel site was located.

That ruling was erroneous, and the judgment below must be reversed, and the case must be remanded to the Circuit Court for a new trial, upon the authority of Creede & Cripple Creek Mining & Milling Co. v. Uinta Tunnel, Mining & Transportation Co., 196 U. S. 337, 25 Sup. Ct. 266, 49 L. Ed. 501, and Uinta Tunnel, Mining & Transportation Co. v. Creede & Cripple Creek Min. & Mill. Co., 119 Fed. 164, 57 C. C. A. 200. And it is so ordered.