## UNITED STATES v. SHERMAN.

(Circuit Court of Appeals, Eighth Circuit. March 28, 1923.)

No. 6021.

1. Mines and minerals ⊙=14(1)—Both discovery and marking of boundaries essential to valid "location" of mining claim.

Both discovery of a vein or lode within its limits and distinct marking of its boundaries are essential to valid "location" of a lode mining claim.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Location.]

2. Mines and minerals ⊙=29(6)—Valid location of claim essential to right of possession.

Right to possession of a mining claim comes only from a valid location.

3. Mines and minerals ⊙=14(1)—State statutes may enlarge requirements for location of mining claims.

States may pass regulatory statutes specifying with more exactness the acts to be done by a locator in making location of a mining claim, and when those statutes are not in conflict with congressional legislation, but are aids to carrying out congressional purpose, they are valid, and must be complied with.

4. Mines and minerals ⊙=21(1)—Location of mining claims held invalid for insufficiency of description in location certificates.

Locations of mining claims held invalid for insufficiency of description in location certificates, under Rev. St. § 2324 (Comp. St. § 4620) requiring such certificates to contain such description "by reference to some natural object or permanent monument as will identify the claim."

5. Mines and minerals ⊙=20(1)— A stake is not a "post," within statute prescribing method of marking surface boundaries.

A stake is not a "post," within the meaning of Rev. Code S. D. 1919, § 8731, prescribing that surface boundaries of mining claims shall be marked by substantial "posts"; a post signifying more permanence, and requiring more effort and outlay to sink it into the ground, and suggesting larger proportions than a stake.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Post.]

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suit in equity by the United States against Frank Sherman. Decree for defendant, and the United States appeals. Reversed, with directions to enter a decree for plaintiff.

E. D. Barron, Asst. U. S. Atty., of Sioux Falls, S. D. (S. W. Clark, U. S. Atty., of Redfield, S. D., and P. J. Tscharner, Asst. U. S. Atty., of Rapid City, S. D., on the brief), for the United States.

Frank Sherman, pro se.

Before LEWIS, Circuit Judge, and POLLOCK and SYMES, District Judges.

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LEWIS, Circuit Judge. The Black Hills National Forest was created by Presidential Proclamation in February, 1897 (29 Stat. 902), and enlarged in area and its boundaries extended by Proclamation in September, 1898 (30 Stat. 1783). In June, 1918, appellant, through its proper officers and agents, contracted to sell certain standing timber within the forest. When it came to marking the trees that might be cut by the purchasers appellee came upon part of the ground and claimed it as comprised within two lode claims (Oaxaca and Helamonster) to which he asserted an exclusive possessory title and right, and by threats and intimidation prevented appellant's agents from marking any trees upon the tract which he claimed or from going upon it for that purpose. Thereupon appellant filed its bill for an injunction restraining appellee from interfering with appellant's officers and agents in the premises. Appellee answered and claimed the right to exclusive possession of about 41½ acres which were comprised, as he alleged, in the Oaxaca and the Helamonster lodes. He alleged the discovery of mineral-bearing quartz in place, location certificates filed, annual assessment work done, and the law fulfilled in every respect necessary to constitute them valid locations. On final hearing the court found that appellee had made valid locations of the claims, that he had performed his assessment work up to and including 1916, that he performed no work in 1917 but delivered to his father, for filing, exemption certificates for the required work in 1917, in compliance with the provisions of the statute with reference to assessment work during the war. This certificate was not filed but exemption certificates were filed in 1918 and 1919. The court further found that there had been discovery of a gold-bearing lode, and that there was a distinct marking of the boundaries of the claims.

[1, 2] The fee in the land in dispute is in appellant, but appellee claims exclusive possessory right and title under alleged compliance with R. S. U. S. §§ 2318–2324 (Comp. St. §§ 4613–4616, 4618–4620). The question presented here is, whether the record will support the finding that the locations were valid and subsisting. Section 2320 (Comp. St. § 4615) restricts the length of each claim along the vein not to exceed 1,500 feet, and in width not more than 300 feet on each side of the middle of the vein at the surface, and requires that the end lines of each claim shall be parallel to each other and recites:

"But no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located."

Appellee contends that each claim is of the maximum width and length. Section 2324 (Comp. St. § 4620) requires that "the location must be distinctly marked on the ground so that its boundaries can be readily traced." Unless both of these statutory requirements are complied with a mining location is not valid and the pretended locator has acquired no rights. Erwin v. Perego, 93 Fed. 608, 611, 35 C. C. A. 482. In Cole v. Ralph, 252 U. S. 286, at page 296, 40 Sup. Ct. 321, 326 (64 L. Ed. 567), it is said:

"Location is the act or series of acts whereby the boundaries of the claim are marked, etc., but it confers no right in the absence of discovery, both being essential to a valid claim."

And in Belk v. Meagher, 104 U. S. 279, at page 284 (26 L. Ed. 735), it is said:

> "The right to the possession comes only from a valid location. Consequently, if there is no location there can be no possession under it. Location does not necessarily follow from possession, but possession from location. A location is not made by taking possession alone, but by working on the ground, recording and doing whatever else is required for that purpose by the acts of Congress and the local laws and regulations."

The location certificate of the Oaxaca lode, filed in the office of Register of Deeds of Pennington County, as required by State statute, recites that lode to have been located by appellee on February 4, 1902, and the certificate of the Helamonster, that it was located by appellee on March 8, 1902. When this controversy arose appellant's agents went with appellee to the premises for the purpose of trying to find the two lode claims and ascertain, if they could, their boundaries. At that time there was nothing on the ground from which the boundaries of either could be traced. He took them to a tree which he says he thought might be the tree that he had blazed sixteen years before and established a corner on it, but he was not sure. He blazed that tree fresh as a corner, or at about a corner of the Oaxaca lode. They then went up the mountain and he showed them his discovery, where he had worked. They then went down the gulch to a point where he says the stake was that was supposed to be the southeast corner of that lode and the northeast corner of the Helamonster, but he said he was not sure whether he put it on a pine tree or a pitch stake, but that it had been established somewhere in a radius of 100 feet or such matter, and he said to them:

> "Now, here is a tree that looks like it might have had an axe blaze on it some 16 years ago, we'll just blaze this tree fresh."

They then went on to, as near as he could remember, the southeast corner of the Helamonster, and he found a tree there that he thought had an old axe blaze on it, and he said:

> "We'll blaze this tree off and just leave it here as a temporary mark * * * that this kind of establishes the east line; the west line will be about 600 feet west of here, wherever that takes us."

He further testified that,

> "As to whether I marked the Helamonster when I located it by blazing trees or setting stakes I couldn't answer that question specifically, but I might have marked on trees and I might not, but I thought as my recollection that the northeast corner of the Helamonster and the southeast corner of the Oaxaca lode was established on a pitch stake, but I ain't going to say for sure because I don't remember. I ain't going to say whether the trees I blazed were actually trees that had been at the corner, they might have been. * * * When I located these claims, I put up stakes or identified the boundary at every corner. * * * As to whether I was prepared to show them the stakes at any time within the last ten years, that is a pretty bad question. I will have to object to that question as being immaterial and incompetent. * * * As to whether I set any stakes in the middle of the lines along the boundaries of either claim, it used to be the custom in locating claims we were supposed to put in north and center stakes, side center stakes and south end center stakes, but in patent work the Commissioner of the General Land Office rules that anything that

identified a·corner was all that was necessary, whether it be a stake or stone, so it became the custom with prospectors to just put in stakes where there are corners and that was what was used on this property. I am quite sure, as I remember, the stakes were just put in at the corners. * * * They were staked with four stakes I am quite sure, eighteen years ago is a long time to remember back, but as I remember it they were staked with four stakes. The stakes that I blazed were marked on the inside to indicate the relation of the stakes to the ground."

One of appellant's witnesses testified that appellee told him that the corners of the Helamonster were trees. Appellee throughout speaks of stakes, not posts. This is all of the testimony we find in the record tending to show compliance with the statute requiring that "the location must be distinctly marked on the ground so that its boundaries can be readily traced"; and in our opinion no satisfactory conclusion can be drawn from it as to just what appellee did in his claimed attempt to comply with that requirement. He first said that he thought the tree to which he first took appellant's agents might be the tree that he might have blazed some sixteen years before and establishd a corner on it, but he was not sure. In the end he said that he thought the trees he blazed on that occasion were near the corners. He then says he is quite sure that stakes were put in at the corners. At first he also said that they went down the gulch to where the stake was that was supposed· to be the southeast corner of the Oaxaca lode 'and the northeast corner of the Helamonster lode, and that he told Mr. Robinson that he was not sure whether he put it on a pine tree or a pitch stake, but that it had been established somewhere in a radius of say 100 feet or such matter from that point. He also said that as to whether he marked the Helamonster lode when he located it by· blazing trees or by setting stakes he couldn't answer, that he might have marked on the trees and he might not. No stakes were found; and we are of opinion that this evidence falls far ‚short of showing a compliance with the requirement of the statute in this respect. But conceding the most that can be claimed in favor of appellee in that respect, that he placed a stake at each of the four corners of the claims, still he failed to comply with the law. There is no evidence that he set a stake (or post), between corners on each side line and each end line, or otherwise marked the boundaries at those places.

[3] The Acts of·Congress extending the right to obtain the exclusive right of possession to parts of the public domain valuable for ore deposits, set forth the minimum requirements exacted of the locator. It was early held and has now become firmly established that the States in the mining regions may also pass regulatory statutes specifying with more exactness the acts to be done and performed by a locator in making a valid location, and when those statutes are not in conflict with congressional legislation on the subject but are aids to carrying out congressional purpose they are valid and must be complied with. Butte City W. Co. v. Baker, 196 U. S. 119, 25 Sup. Ct. 211, 49 L. Ed. 409; Mining Co. v. Tunnel Co., 196 U. S. 337, 346, 25 Sup. Ct. 266, 49 L. Ed. 501; Clason v. Matko, 223 U. S. 646, 654, 32 Sup. Ct. 392, 56 L. Ed. 588. A statute of South Dakota in effect when appellee claims to have made these locations reads thus:

"Such surface boundaries shall be marked by eight substantial posts, hewed or blazed on the side or sides facing the claim and plainly marked with the name of the lode and the corner, end or side of the claim that they respectively represent, and sunk in the ground: one at each corner and one at the center of each side line, and one at each end of the lode." Rev. Code S. D. 1919, § 8731.

[5] A stake is not a post. The latter signifies more permanence, and to sink it in the ground requires more effort and outlay, than to drive down a stake. It suggests larger proportions, is more readily seen than a stake. There is no pretense by appellee that he complied with this statute. His testimony shows that he did not; and his locations were therefore void. He acquired no possessory right to any of the ground in controversy.

[4] There is another fact showing that appellee never made a good and valid location. R. S. U. S. § 2324 (Comp. St. § 4620) has this additional requirement:

"All records of mining claims hereafter made shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim."

In furtherance of this the South Dakota statute (Rev. Code 1919, §§ 8728, 8729) requires the filing of a location certificate with the Register of Deeds of the county in which the lode is situated within sixty days from the date of the discovery, and says that if the description in it is not such as shall identify the claim with reasonable certainty it shall be void. The location certificate filed by appellee for the Oaxaca lode, after stating that it is in Pactola Mining District, Pennington County, describes it thus:

"Said claim is located about 1 mile west of Pactola and North of Rapid Creek in Boarding House Gulch and is about 1,500 feet East of the Sherman Placer, being a full claim in size running 500 feet northwesterly from center of discovery shaft and 1,000 feet southeasterly from discovery shaft."

The Helamonster certificate recites that it is in the Pactola Mining District, Pennington County, and describes it thus:

"Said claim is bounded on the north by Oaxaca lode and lies parallel with said claim, and bounded on the south by the Captain Jack Placer and is north of Rapid Creek in Boarding House Gulch, being a full claim in size running 600 feet northwesterly from center of discovery shaft and 900 feet southeasterly from center of discovery shaft."

Witnesses for appellant testified that they were not able from the description in the location notices to locate or identify the ground in the two claims, that the Sherman Placer and the Captain Jack Placer were not well known mining claims, that they were not able to find any one in the neighborhood who could point them out, except Mr. Sherman claimed to know where the Captain Jack Placer was. Appellee told them that the two claims had a common end line, and the Oaxaca is north of the Helamonster as shown in location certificate. The distance between points of discovery on the two claims is 1,600 feet as it is given in the location certificates, on the assumption that their ends abut. The two points of discovery were pointed out by appellee, and on measurement they were found to be about 3,400 feet

apart. The descriptions given in the location certificates were not such as to identify the claims with reasonable certainty, which also rendered the locations void. Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. 560, 28 L. Ed. 1113; Marshall v. Mining Co., 1 S. D. 350, 47 N. W. 290; Regan v. Whittaker, 14 S. D. 373, 85 N. W. 863.

The testimony is also convincing beyond question that no discovery was ever made on the Helamonster. We are clearly of opinion that the decree is not supported by the facts, is contrary to them and should have been in favor of appellant, and it is reversed with directions to enter decree as prayed in favor of the plaintiff below.