THEODORE R. GERLACH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38042, 41641.   Promulgated January 31, 1933.

*Paul E. Shorb, Esq.*, and *M. P. Wormhoudt, Esq.*, for the petitioner.

*George D. Brabson, Esq.*, for the respondent.

OPINION.

LEECH: A stipulation of the parties discloses that the sum of $268 included by respondent in petitioner's income for each of the years involved represented dividends paid his wife on 67 shares of stock acquired by her independently of the contract of November 15, 1919. It is apparent that these amounts did not represent income to petitioner and respondent is therefore in error as to this item.

This leaves the question as to whether the dividend payments made by the Gerlach-Barklow Company of $15,184 in each of the years 1923 and 1924 to petitioner's wife on 3,796 shares of stock acquired by her under the contract of November 15, 1919, represented income to her or to petitioner.

Petitioner clearly acquired the beneficial title to this stock by his purchase from Lambert and Thompson on November 11, even though the stock register of the company did not show the actual transfer. *Holden* v. *Williams*, 65 Ill. App. 466; *Allen* v. *Williams*, 212 Ill. App. 114. Petitioner was entitled thereafter to the dividends thereon though the stock was placed in escrow to secure payment of the purchase price. *Long* v. *United States*, 66 Ct. Cls. 475.

The taxable status of the dividends in question is determined not only by the intention of the petitioner and his wife in reference thereto, which is evidenced by the contracts of November 11 and November 15, but by what was done thereunder.

It is fundamental that in construing a written instrument, it must be considered as a whole, and, if possible, effect be given to each provision. *O'Brien* v. *Miller*, 168 U. S. 287; *Claude H. Birdsall*, 2 B. T. A. 1169; 6 Ruling Case Law, 837, 838. The contract between petitioner and his wife provides that petitioner shall have the right:

* * * to vote such stock at all meetings of the stockholders and to collect and to receive all dividends paid thereon, it being agreed by him that all dividends so received upon said stock shall be applied by him toward the payment of the principal of the notes evidencing the various installments of the purchase price of said stock as they mature, and it being further understood that the party of the first part will himself pay the interest on said notes according to the terms thereof and the balance of the principal after applying the dividends received as aforesaid. * * *.

Respondent argues that this provision constitutes a specific reservation of the income from the stock for petitioner's use and benefit. Even if the quoted provision stood alone, it would be difficult to accept this view, as it provides that petitioner will, in addition to the application of the dividends, " *himself* " pay the interest and the balance of the principal. This language would naturally indicate that the latter payments were the only ones made by petitioner in his individual capacity. However, the quoted portion of the assignment does not stand alone, but must be considered in connection with other sections of the agreement, just as specific, which we would have to disregard to apply the construction for which respondent contends. One of these is the provision that it should be " expressly understood and agreed that all dividends hereafter paid on the stock * * * whether paid by the respective company to the party of the second part or the party of the first part shall be treated as the property of the second part, but if paid direct to the party of the first part they are to be applied by him for the benefit of the party of the second part toward the payment of the purchase price of said stock * * *."

In our opinion, it is impossible to reconcile this last provision with the one first quoted, if that provision constitutes a reservation of the income on the stock to petitioner for his use and benefit. On the other hand, it is possible to reconcile it with the foregoing provision if the latter merely provides for the receipt of the income by petitioner for his wife and solely for the purpose of its application by him in her interest.

Assuming the contract of assignment is impossible of such a construction as will give effect to each provision contained therein, we

may obtain the general intent of the parties to the writing from the language employed in the entire instrument, as applied to its subject matter, even if such intent is apparently in conflict with some word or clause in the writing. *Green County, Ky.* v. *Quinlan*, 211 U. S. 582; *Uinta Tunnel Mining & Transportation Co.* v. *Ajax Gold Mining Co.*, 141 Fed. 563. In proceeding to such a determination, the interpretation placed on the contract in question by the parties thereto, evidenced by what they actually did thereunder, is important, if not controlling: *Lowrey* v. *Hawaii*, 206 U. S. 206; *District of Columbia* v. *Gallagher*, 124 U. S. 505; *Insurance Co.* v. *Dutcher*, 95 U. S. 269. Taxation is a highly practical matter, and, in any event, what we are called upon to decide is not an intention, upon which no tax is imposed, but the legal status of *what actually occurred: Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179; *United States* v. *Phellis*, 257 U. S. 156; *Anna M. Harkness*, 1 B. T. A. 127; *Gladys Bilicke*, 20 B. T. A. 784. What does the record disclose actually occurred here? Immediately following the assignment by petitioner to his wife, the petitioner notified officials of the company and others that he had transferred his entire interest in the stock to his wife. Nobody, including petitioner, ever thereafter asserted by word or act any claim or right to ownership in the stock or the dividends therefrom, except the wife of the petitioner. The minute book of the company proclaimed her the owner. The stock was voted on her proxy—not by petitioner alone, but by three individuals, including petitioner, who actively directed the affairs of the company. The dividends were actually paid to the wife in every instance.

The contract of assignment of November 15 by Gerlach to his wife was certainly sufficient to vest in her all his transferable " right, title and interest in the contract (with Lambert and Thompson) and the stock," itself, which carried with it the right to dividends thereon, unless reserved. *Long* v. *United States, supra.* The stock was encumbered with the balance due on the purchase price, evidenced by the petitioner's notes and the escrow agreement of November 11. Although Gerlach could not assign his personal liability on the notes without the acquiescence of Lambert and Thompson, he could assign his interest in the stock subject to the encumbrance thereon, effective as between him and his assignee, Mrs. Gerlach, in passing this obligation to her. We conclude that this was accomplished, as to a part of the encumbrance, by his assignment on November 15 of " all his right, title and interest in and to the *contracts* above mentioned and the *shares of stock* " to Mrs. Gerlach. In accepting this assignment and signing the contract, she assumed, as between the petitioner and herself, the obligation of paying the amount of the dividends she received on the stock on account of the balance

due on the original purchase price, during the period covered by the contract.

Mrs. Gerlach actually received all the dividends in question. She applied them to the payment of the encumbrance on the stock. Her primary interest was to pay the obligation she assumed in the contract of November 15 and such dividends were therefore income to Mrs. Gerlach within the definition of the court in *Bettendorff* v. *Commissioner*, 49 Fed. (2d) 173.

It can not be said that petitioner's wife was a purchaser from him of the stock in question in consideration of the dividends to be received and that these dividends represented income first to her and, then were taxable again to petitioner when paid over to him as part of the purchase price. Such theory could be based only upon the premise that the transaction was one giving rise to gain, whereas, in fact, it was one from which no gain could possibly accrue to petitioner. If the dividends, when paid, represented income to petitioner's wife, they could in no event be taxable income to petitioner when paid by her to him, as they would represent merely a return of petitioner's capital outlay to that extent, and this, being in excess of any possible payment to be received from his wife, no portion of any of such payment could represent gain to him.

We can not agree that, because petitioner had executed his promissory notes for the unpaid portion of the purchase price, the use of the dividends in payment of these notes was one primarily in his interest as reducing his obligation, for the evidence shows that a failure to pay the notes would have resulted in liability of the stock to sale. This stock was the property of his wife and its fair market value was at no time less than the amount of the notes. In fact, in 1923, when the first of the dividends here in question was paid to petitioner's wife, 60 per cent of the purchase price of the stock had been paid and the stock had a substantially higher market value at that time than its cost to petitioner. Petitioner's wife, and not petitioner, would have been the loser had the notes not been paid. The application of the dividends for their payment was a use of them in her interest, and they were income to her. Cf. *Bettendorff* v. *Commissioner*, *supra; Paul Akers Bowden*, 26 B. T. A. 1410.

Respondent cites *Bettendorff* v. *Commissioner*, *supra*, as controlling. That case is clearly distinguishable upon the facts, for there title to stock was transferred by a mother to her son, with reservation of the income to her for life *for her personal and unrestricted use*. However, the reasoning of the court as to the situation presented in that case seems to sustain our present conclusion upon the facts presented here.

We hold that the dividends of $15,184 paid in each of the years 1923 and 1924 to petitioner's wife represented income to Mrs. Gerlach and not to petitioner.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Murdock, dissenting: The petitioner retained the right to collect and receive the dividends pending the payment of his notes. The dividends were actually used to pay the petitioner's notes. Therefore, the dividends were income to. him.

Smith and Van Fossan agree with this dissent.